Gerard **HARTZOG**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 6847.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 9, 1954.

Decided Dec. 21, 1954.

Elden McFarland, Washington, D. C., for appellant.

Irvine F. Belser, Jr., Asst. U. S. Atty., Columbia, S. C., (N. Welch Morrisette, Jr., U. S. Atty., Columbia, S. C., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Gerard Hartzog (hereinafter called Hartzog) was convicted of criminal evasion of federal income taxes, in violation of 26 U.S.C. § 145(b), by the United States District Court for the Eastern District of South Carolina. Hartzog was indicted on three counts, one count for each of the years 1946, 1947 and 1948. He was acquitted on the 1946 count but found guilty on each of the other two counts. After the jury had returned its verdict and before judgment, Hartzog made a motion for a new trial; this motion was denied, and Hartzog was sentenced to five years' probation.

Hartzog has appealed to us and presents two questions: (1) whether certain worksheets were properly admitted in evidence against him; and (2) whether certain loans received by Hartzog from the Commodity Credit Corporation on cotton were properly included in the Government's computation of his 1948 income.

We need express no opinion as to the merit of Hartzog's second issue, since we hold that it was prejudicial error for the lower court to admit the worksheets in evidence, and the case must be reversed and remanded for a new trial pursuant to Hartzog's motion.

The worksheets in question were put into evidence as a substantial part of the Government's proof of Hartzog's income for 1947 and 1948. There were two sets of worksheets introduced in evidence, and an objection was made by Hartzog's counsel to the introduction of either set as proof of the contents of Hartzog's records for the years 1947 and 1948, since, it is contended, both sets are hearsay evidence.

One set of worksheets was prepared in 1951 by a Deputy Collector of Internal Revenue named Baynard, who died before this case came to trial. The second set was prepared in 1951 by Berlin, a special agent of the Internal Revenue Service. Baynard's worksheets list and classify checks, check stubs and other records into the various categories of income, the various categories of allowable deductions, the category of personal or other non-deductible expenses, the category of non-taxable receipts, and the categories of capital or ordinary gains and losses, and long and short term capital gains and losses.

Berlin supervised the making of Baynard's worksheets but never examined any of the information and materials upon which Baynard based his figures, except upon one occasion when he saw Hartzog's farm ledgers for about two minutes. Berlin's worksheets are based primarily on information obtained from Baynard's worksheets and were prepared with Baynard's collaboration, although Berlin also used some information obtained from outside sources such as bank statements and Hartzog's clients. Berlin's worksheets were prepared when it became apparent that the information obtained by Baynard would not give a sufficient picture of Hartzog's income.

Both sets of worksheets were made in preparation for this prosecution, after Hartzog had refused the agents permission to see the bulk of his records. Baynard was permitted to see a small portion of Hartzog's records and information obtained from these sources is the basis of his worksheets. We shall first consider the admissibility of the Baynard worksheets.

 In a criminal prosecution, the right of the Government to introduce these worksheets as secondary evidence of the contents of Hartzog's record is uncontradicted, provided such evidence is otherwise admissible. See Paschen v. United States, 7 Cir., 70 F.2d 491; Lisansky v. United States, 4 Cir., 31 F.2d 846, 67 A.L.R. 67. As then Circuit Judge Parker stated for this court in the Lisansky case, supra, 31 F.2d at page 850:

"But evidence as to the contents of books and papers is not lost to the government because the defendant has them in his possession and their production cannot be ordered or the usual basis laid for the introduction of secondary evidence. In such cases, the rule is that, when they are traced to his possession, the government, without more ado, may offer secondary evidence of their contents."

This rule does not, however, give the Government carte blanche to introduce any type of evidence merely because it may be relevant and material as secondary evidence of the contents of a defendant's records. Such secondary evidence may not be admitted for the purpose of such proof if it is hearsay. Clearly, the worksheets prepared by Baynard before his death, and introduced without his testimony, are hearsay in so far as they tend to indicate the existence of the records and checks upon which the worksheets are based; they are also hearsay as to the amounts and classifications of these checks and other records.

██ The Government contends, however, that Baynard's worksheets, even though hearsay, are admissible as proof

of the truth of their contents, under the provisions of 28 U.S.C. §§ 1732, 1733. These sections reads as follows:

"1732. Record made in regular course of business. In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

"All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.

"The term 'business,' as used in this section, includes business, profession, occupation, and calling of every kind."

"1733. Government record and papers; copies. (a) Books or records of account or minutes of proceedings of any department or agency of the United States shall be admissible to prove the act, transaction or occurrence as a memorandum of which the same were made or kept.

"(b) Properly authenticated copies or transcripts of any books, records, papers or documents of any department or agency of the United States shall be admitted in evidence equally with the originals thereof."

Section 1733 obviously has no application here. Baynard's worksheets are not books or records of account of a department or agency of the Government, nor are they minutes of any proceeding.

The wording of Section 1732 raises quite a different problem. Its language is broad and inclusive, and a literal reading of its provisions may suggest that Baynard's worksheets are admissible evidence. This section has not been given such a literal interpretation by the Supreme Court.

Mr. Justice Douglas in the leading case of Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, pointed out the evils inherent in a strict application of this section, 318 U.S. at pages 113–114, 63 S.Ct. at page 480:

"Any business by installing a regular system for recording and preserving its version of accidents for which it was potentially liable could qualify those reports under the Act. The result would be that the Act would cover any system of recording events or occurrences provided it was 'regular' and though it had little or nothing to do with the management or operation of the business as such. Preparation of cases for trial by virtue of being a 'business' or incidental thereto would obtain the benefits of this liberalized version of the early shop book rule. The probability of trustworthiness of records because they were routine reflections of the day to day operations of a business would be forgotten as the basis of the rule. * * * Regularity of preparation would become the test rather than the character of the records and their earmarks of reliability * * * acquired from their source and origin and the nature of their compilation. We cannot so completely empty the words of the Act of their historic meaning. If the Act is to be extended to apply not only to a 'regular course' of a business but also to any 'regular course' of conduct which may have some relationship to business, Congress not this Court must extend it. Such a major change which opens wide the door to avoidance of cross-examination should not be left to implication. Nor is it any answer to say that Congress has provided in

the Act that the various circumstances of the making of the record should affect its weight not its admissibility. That provision comes into play only in case the other requirements of the Act are met.

"In short, it is manifest that in this case those reports are not for the systematic conduct of the enterprise as a railroad business. Unlike payrolls, accounts receivable, accounts payable, bills of lading and the like these reports are calculated for use essentially in the court, not in the business. Their primary utility is in litigating, not in railroading."[1]

██ The legislative history of Section 1732 gives ample support to this construction of the section. See Sen. Rep. No. 1965, 74th. Cong. 2d Sess. (1936). This section was enacted to provide a relaxing of the strict common-law rule requiring identification of book entries by all parties making them. It is clear that Congress did not intend to do away with the requirement that the record to be admissible, must carry with it some guarantee of trustworthiness. See Gordon v. Robinson, 3 Cir., 210 F. 2d 192; Hoffman v. Palmer, 2 Cir., 129 F.2d 976, affirmed 318 U.S. 109, 63 S. Ct. 477, 87 L.Ed. 645.

██ On the record presented to us, it does not appear that the worksheets prepared by Baynard were prepared under such circumstances as will provide a guarantee of trustworthiness. These worksheets were made in preparation for this prosecution; they were Baynard's personal working papers, were the product of his judgment and discretion and not a product of any efficient clerical system. There was no opportunity for anyone, especially Berlin, to tell when an error or misstatement had been made. These worksheets were no more than Baynard's unsworn, unchecked version of what he thought Hartzog's records contained. Applying the cri-

terion of the Hoffman case, that admissibility is to be determined by "the character of the records and their earmarks of reliability * * * acquired from their source and origin and the nature of their compilation", 318 U.S. at page 114, 63 S.Ct. at page 480, we hold that these worksheets were inadmissible as evidence of the truth of their contents. See, e. g., United Mine Workers of America v. Patton, 4 Cir., 211 F.2d 742; Chapman v. United States, 5 Cir., 194 F.2d 974; Masterson v. Pennsylvania R. Co., 3 Cir., 182 F.2d 793; Gilbert v. Gulf Oil Corp., 4 Cir., 175 F.2d 705, 709–710; New York Life Ins. Co. v. Taylor, 79 U.S.App.D.C. 66, 147 F.2d 297. But see Korte v. New York, N. H. & H. R. Co., 2 Cir., 191 F.2d 86.

The Government places great reliance upon the case of United States v. Mortimer, 2 Cir., 118 F.2d 266. In this case a number of charts were admitted in evidence on the testimony of one Karcher, an accountant who had supervised their preparation. Objection was made to the charts since one of Karcher's assistants in the preparation of the charts did not take the stand. The Second Circuit quite properly held that the testimony of a supervisory agent alone is sufficient where he has had complete supervision and direction of preparation of the evidence which he offers. We do not think that such supervision and control existed in the instant case. Baynard was not a mere tool of Berlin. He exercised his own discretion and judgment as to classification of information which he alone saw. While Berlin may have been his "supervisor," in fact the two parties were operating on the same level in this investigation. Moreover, the Mortimer case is founded on the assumption that the evidence was compiled "according to a method at once practicable and offering reasonable guaranty of accuracy * * *." 118 F.2d at page 269. We do not think that Baynard's worksheets were prepared by such a method.

---

1. This case construed the provisions of 28 U.S.C. § 695 which is the predecessor of Section 1732 and the same as Section 1732 except that Section 1732 embodies some minor amendments of § 695 that are not important here.

Since we hold that Baynard's worksheets are inadmissible as being mere hearsay, it necessarily follows that Berlin's worksheets are also inadmissible in so far as they are based on Baynard's worksheets. See United States v. Grayson, 2 Cir., 166 F.2d 863. Such a holding is not necessary for reversal of this case, in view of the prejudice in admitting Baynard's worksheets. Since the case must go back for a new trial, however, we feel that an expression of our opinion on this point is necessary.

For a like reason, we must state our view that the amount of the cotton loans made by the Commodity Credit Corporation was not income to Hartzog for the year 1948.

The Government further contends that any error in admitting the Baynard worksheets was harmless. There is no merit in this contention. Proof of Hartzog's income was based substantially on these worksheets. Practically all of the Government's figures for deductions were determined from Baynard's worksheets. Without this evidence, the jury might well have reached an entirely different result.

For the reasons stated above, the judgment of the District Court is reversed and the case is remanded to that court for a new trial.

Reversed and remanded.