Clarence A. ZACHER, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15310.

United States Court of Appeals
Eighth Circuit.

Nov. 4, 1955.

Rehearing Denied Dec. 12, 1955.

220

Milton Yawitz, St. Louis, Mo. (William J. Costello, Robert H. Batts, and Rassieur, Long & Yawitz, St. Louis, Mo., were with him on the brief), for appellant.

Robert C. Tucker and Charles H. Rehm, Asst. U. S. Attys., St. Louis, Mo. (Harry Richards, U. S. Atty., St. Louis, Mo., was with them on the brief), for appellee.

Before SANBORN, COLLET, and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

The appellant, Clarence A. Zacher, hereinafter referred to as defendant, was found guilty by a jury on all counts of a five-count indictment, each count charging violation of 26 U.S.C. § 145(b) by the filing of a fraudulent income tax return. The first count is based on defendant's 1947 return, the second on the 1947 return of defendant's wife prepared and filed by defendant, and the third, fourth, and fifth counts are based on joint returns of defendant and his wife for the years 1948, 1949, and 1950, respectively. The defendant appeals from final judgment and sentence upon each of said counts. Jurisdiction of this court is invoked under 28 U.S.C. § 1291.

The Government makes no attack upon the gross income reported. Its case is based on unauthorized deductions. The Amended Bill of Particulars filed by the Government reads as follows:

"1. As to each of the five counts of the indictment it is charged that the defendant filed a false and fraudulent income tax return in that he overstated his deductions. The overstatements of his deductions are as follows:

| Count I | $3,608.21 |
| Count II | 1,549.49 |
| Count III | 5,345.25 |
| Count IV | 5,944.21 |
| Count V | 6,953.71 |

"2. The method used by plaintiff in arriving at defendant's correct income is as follows: The gross receipts figures as shown in the returns are adopted as true. Certain specific items of deductions are disallowed and the true net income is determined in subtracting from the reported gross the deductions which are allowed. Plaintiff's proof will further consist of a showing that certain deductions as claimed on Page 3 of the returns were not, in fact, made and could not have been made because of the lack of cash available and proof that the claimed deductions were not paid or made by check."

Proof was offered of overstatement of deductions relating to contributions, casualty losses, taxes, and repairs to rental property. The facts will be further developed hereinafter.

Defendant asserts twelve errors upon which he relies for reversal. These claimed errors are consolidated and summarized as follows:

1. The Government failed to make a prima facie case.

2. The indictment was barred by the statute of limitations.

3. The indictment was not based on competent evidence.

4. Evidence was obtained from defendant in violation of his constitutional rights.

5. There was a fatal variance between the bill of particulars and the Government's proof.

6. The evidence as to leads furnished was improperly excluded, and the Government failed to follow leads.

7. Prejudicial error was committed in the reception and exclusion of evidence.

8. The court erred in refusing certain requested instructions.

We will proceed with the consideration of the defendant's contentions.

■ 1. The defendant moved for a judgment of acquittal at the close of the Government's evidence and at the close of all of the evidence, and said motion was again urged in motion for judgment notwithstanding the verdict. Since evidence was offered in defendant's behalf, the motion interposed at the close of the Government's case has been waived. United States v. Calderon, 348 U.S. 160, 164, 75 S.Ct. 186; Hoyer v. United States, 8 Cir., 223 F.2d 134. The other motions are before us for consideration.

■ In determining the sufficiency of the evidence to support the verdict of the jury, we must view the evidence in the light most favorable to the Government, and give the Government the benefit of all inferences that may reasonably be drawn from the evidence. Hoyer v. United States, supra. The principal overstatement of deductions is in connection with contributions. During the four years here involved defendant and his wife claimed contributions totalling $21,428.85 and had cancelled checks to support only $149.50 of said contributions. In the 1950 joint return contributions were claimed as follows:

| | |
|---|---|
| St. John's Catholic Church, St. Louis, Mo. | $791.60 |
| Church of the Immaculate Conception, St. Louis Mo. | 725.00 |
| St. Peter and Pauls Church, St. Louis, Mo. | 697.00 |
| St. Alphonsus Church, St. Louis, Mo. | 672.50 |
| St. Pious Church, St. Louis, Mo. | 627.00 |
| Webster College, Webster Groves, Mo. | 570.00 |
| St. Margaret's Church, St. Louis, Mo. | 570.00 |
| St. Francis Xavier's Church, St. Louis, Mo. | 547.25 |
| Chaminade College, Clayton, Mo. | 510.50 |
| Father Dempsey's Charities, St. Louis, Mo. | 200.00 |
| St. Vincent de Paul's Society, St. Louis, Mo. | 57.00 |
| Mary Queen of Peace Church, Glendale, Mo. | 175.00 |
| Benedictine Mission Home, Schuyler, Nebr. | 162.50 |
| Cardinal Glennon Memorial Hospital Fund, St. Louis, Mo. | 25.00 |
| St. Augustine Monastery, Pittsburgh, Pa. | 75.00 |
| Salvation Army, St. Louis, Mo. | 26.00 |
| Miscellaneous Donations to Missions, Community Chest, Red Cross, etc. | 57.40 |
| | $6,488.75 |

While amounts claimed for contributions varied, the foregoing is typical of charitable contributions claimed in all involved returns. The Government agents spent considerable time examining the defendant's records. Agent Burton testified that, while he was investigating defendant's returns, defendant admitted that he had nothing to support his contributions claims and conceded that $200 a year, which another revenue agent estimated to be the proper annual amount of contributions, was about the right amount. Later, when defendant was questioned by the examiner under oath, defendant reaffirmed the previous information given to the revenue agents that all income, loans, dividends, gifts, inheritances, and other cash received

were uniformly deposited in his own or his wife's bank account, except for certain designated rent checks which were cashed. The agents prepared a schedule showing cash available from checks drawn to cash and the undeposited rent for each of the involved years, which tended to show an insufficient amount of cash available to make the contributions claimed. Defendant admitted that he had previously been shown such statements of cash available. Relative to such statements he answered questions propounded by the agent as follows:

"Q. What would you say about that? A. Well, it simply indicates very definitely that these amounts were·not contributed. They couldn't be.

"Q. In other words, you realize now that you couldn't have contributed the amount you say you did? A. That's correct.

"Q. In 1950, Mr. Zacher, your contributions, as I stated before, amounted to some $6,500. This, broken down weekly, is around $125.00 a week. When you were making up your return did you actually think that you gave that much money to various charities? A. It never occurred to me to divide it up. If I had I would have readily seen that I couldn't have contributed that."

The defendant's answers as a whole seem clearly to show that his charitable deductions were based upon estimates, that he had no receipts or records to support them, and that he was convinced that he had made overstatements. He denies, however, any willful intent to evade taxes.

 Defendant insists that in any event the claimed admissions are admissions after the fact, and that the essential facts tending to be proved by such admissions must be corroborated. He relies upon Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, and Opper v. United States, 348 U.S. 84, 75 S.Ct. 158. The Government concedes that the admis-·

sions are an essential part of the Government's case and that they must be corroborated, but contends that the record supplies the required corroboration. The requirements as to corroboration are thus stated in the Opper case, 348 U.S. at page 93, 75 S.Ct. at page 164:

"\* \* \* However, we think the better rule to be that the corroborative evidence need not be sufficient, independent of the statements, to establish the *corpus delicti*. It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. Thus, the independent evidence serves a dual function. It tends to make the admission reliable, thus corroborating it while also establishing independently the other necessary elements of the offense. Smith v. United States, 348 U.S. 147, 75 S.Ct. 194. It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth. Those facts plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt."

In the Smith case, supra, the Court states, 348 U.S. at page 156, 75 S.Ct. at page 199:

"There has been considerable debate concerning the quantum of corroboration necessary to substantiate the existence of the crime charged. It is agreed that the corroborative evidence does not have to prove the offense beyond a reasonable doubt, or even by a preponderance, as long as there is substantial independent evidence that the offense has been committed, and the evidence as a whole proves beyond a reasonable doubt that defendant is guilty. \* \* \* All elements of the offense must be established by independent evidence or corroborated admissions, but *one available mode of corroboration is for the independent evidence*

*to bolster the confession itself and thereby prove the offense 'through' the statements of the accused. * * *"* (Emphasis supplied)

We believe that defendant's admissions that contributions were overstated is amply corroborated. Many of the priests and officers of the alleged beneficiaries were called as witnesses. Few of the witnesses knew the defendant and his wife at the time the claimed contributions were supposed to have been made. The organizations still having their contributions records had no record of the contributions claimed by the defendant. A number of witnesses stated that contributions in the amounts claimed would be quite substantial and noticeable. Most of the priests had various types of collections where anonymous contributions were received, but in general such collections consisted of change and dollar bills, with only a very sparse amount of bills as large as $10 or $20, and the total receipts upon each occasion were in relatively modest amounts. A number of witnesses had never seen the defendant and his wife at their church services. Except for the $149.50 in cancelled checks, no substantial proof was offered to support defendant's contention that the contributions had been made. Defendant produced no records to substantiate the contributions. The compiled financial records of defendant and his wife showed that the defendant did not have money available in the form of currency to make the substantial contributions claimed. While it is true in many instances that the officers of the charitable organizations were not able to state categorically that no contribution was received from the defendant or his wife, the record here furnishes strong support to corroborate the defendant's admission that the charitable contributions were not made in the substantial amounts he claimed.

■ There is direct proof exclusive of any admissions from which the jury could find that the defendant overstated casualty losses, and there is also proof that the sales tax deduction claimed exceeded the amount of sales tax paid. There are al-so a number of instances which tend to show that defendant overstated repair costs. For example, his return shows he paid Hill $37.36 for repairs, while his books and cancelled check show the amount of this repair to be $12.36. There are a number of similar discrepancies. The record amply supports a finding that the defendant's net income was substantially understated in the returns involved in this case because of overstatement of deductions.

The defendant has not admitted any willfulness or intent to evade the tax. Intent can seldom be proved by direct evidence. A consistent pattern of overstating deductions is shown. While many of defendant's bills were paid by check, scarcely any of the contributions were so paid. No records of the contributions were kept. Yet they are claimed in amounts of odd dollars and cents, repair invoices are padded and casualty losses are overstated. The evidence heretofore set out, when considered as a whole, fully supports a jury finding that the overstatement of deductions was willful and was done with an intent to evade the tax. Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418; Holland v. United States, 348 U.S. 121, 75 S.Ct. 127; Canton v. United States, 8 Cir., 226 F.2d 313.

■ 2. The 1947 return involved in the first count was filed on December 30, 1947. Complaint was filed with the United States Commissioner on December 29, 1953, and the indictment was returned by the grand jury on January 7, 1954. Defendant moved to dismiss the indictment because it was barred by the six-year statute of limitations. 26 U.S.C. § 3748. He also objected to the fact that the indictment did not recite that the complaint had been filed. Proof of the filing of the complaint within the statutory period may be introduced although such fact is not set out in the indictment. United States v. Clayton-Kennedy, D.C.Md., 2 F.Supp. 233, 235. The complaint was filed within the limitations period. Under 26 U.S.C. § 3748(a) (3), where complaint has been filed before

the Commissioner within the limitations period, the time for filing indictment is extended until the discharge of the grand jury at its next session. The elapsed time between the complaint and indictment here was very short. The case was tried before the chief judge of the district. The court summons and discharges the grand jury. The court can take judicial notice of the sessions of the grand jury within the district. White v. United States, 5 Cir., 216 F.2d 1, 4. There was no error in overruling the motion to dismiss the indictment.

■ 3. Defendant also moved to dismiss the indictment on the ground that it was based on hearsay and opinion testimony of a Government investigator, and that there was no competent or legal evidence before the grand jury to establish the essential elements of the indictment. The defendant relies on Nanfito v. United States, 8 Cir., 20 F.2d 376, and Brady v. United States, 8 Cir., 24 F.2d 405, 59 A. L.R. 563, wherein it is stated that an indictment should be quashed if there is no competent evidence of the offense charged presented to the grand jury. In United States v. Costello, 2 Cir., 221 F.2d 668, 677, certiorari granted, 76 S.Ct. 48, the Second Circuit considers the rule stated in the Brady and Nanfito cases, and states that, if "incompetent" includes all evidence that may be excluded at the trial, it feels that the rule of the Brady case is too narrow. We are not here confronted with the necessity of determining just what is included in the term "incompetent evidence." We feel the evidence here offered fully met the test of the Brady case. Even if it be true that agent Hanley was the only witness before the grand jury, the same witness appeared at the trial and offered substantial evidence which was admitted. Presumably he covered the same field before the grand jury. The situation here presented seems to be similar to that presented to this court in Banks v. United States, 204 F.2d 666. There the defendant moved to dismiss the indictment because the grand jury spent only an hour in considering the case and heard only one Government witness, the testimony apparently consisting of some proof of the net worth method and the findings of Government investigators. This court at page 670 states:

"* * * The evidence was admissible not only before the grand jury but also upon the trial. * * *

"Further a trial court's exercise of discretion in denying a motion to quash or dismiss an indictment because of irregularity, if any, in grand jury proceedings is not ordinarily reviewable. * * *"

We are convinced that the court did not abuse its discretion in overruling the motion.

■ 4. Defendant moved the court to suppress as evidence his books, papers and documents upon the ground that he was not advised of his constitutional rights at the time he turned over his records to the Government for examination. It appears that the examination started out as an ordinary tax audit. Defendant on all occasions voluntarily gave information and produced his papers. Even at the time of his examination under oath, after he was advised of his constitutional rights, he testified as follows:

Q. "You understand that you are not required to answer any questions which would be incriminating?"

A. "Yes. I felt free to answer these questions as you presented them to me before. I felt free then. I feel free now."

The record clearly shows that the furnishing of all information and records by the defendant to the agents was entirely voluntary. There is no evidence that the agents used any force or pressure at any time. In Turner v. United States, 4 Cir., 222 F.2d 926, at page 931, the court states:

"* * * The relevant inquiry is always whether the taxpayer freely gives his consent, and as to that there is no dispute in this instance.

"It has been expressly held time and again in tax evasion and other

criminal cases that it is not essential to the admissibility of statements secured by officers of the law from a defendant that he should be first warned that the information might be used against him in a criminal case, provided that it was voluntarily and understandingly given. * * *"

See also Blumberg v. United States, 5 Cir., 222 F.2d 496; Hanson v. United States, 8 Cir., 186 F.2d 61. No constitutional rights of the defendant have been violated. The motion to suppress was properly overruled.

■ 5. There is no fatal variance between the Government's proof and the amended bill of particulars. The amended bill was hereinabove set out. In the early part of paragraph 2 it is stated that certain specific items of deductions are disallowed. Later it is stated that the proof will further consist of a showing that certain deductions claimed on page 3 were not made. The record shows that the defendant was advised that the Government was relying on overstatement of repair deductions. The bill of particulars was broad enough to permit proof of overstatement of repair deductions.

■ 6. Defendant's counsel wrote the United States Attorney advising that defendant had substantial sums of cash available as the result of gifts from his mother-in-law, Mrs. Wander, and asked that the case be reconsidered and further investigated. Apparently, the United States Attorney sent this letter to the Attorney General with a recommendation that the case be dropped. Defendant by a subpoena duces tecum, not part of the record here, sought to have the letter to the Attorney General produced. The Government moved to quash the subpoena, and such motion was sustained. It seems clear that the letter to the Attorney General was a confidential and privileged communication, and accordingly the motion to suppress was properly sustained.

■ Defendant further contends that the aforementioned letter to the United States Attorney constituted a lead which the Government should have followed by investigation pursuant to Holland v. United States, supra. We do not consider this to be a net worth case. Specific overstatements of deductions are claimed and relied upon. Prior to the receipt of the letter, during the course of the extensive investigation made of the defendant's affairs, thorough inquiry as to gifts and inheritances was made, and the agents were advised that all such items were deposited in the bank account of defendant or his wife. As corroboration of the overstatements of contributions, the Government, through analysis of the bank accounts of the defendant and his wife, showed that there were insufficient cash withdrawals and undeposited rent items to provide the money for the large contributions claimed. We are also of the opinion that even if the rule of the Holland case as to leads should be held inapplicable here sufficient compliance has been shown. Mrs. Wander died in 1948, a number of years before the investigation commenced. It appears that she kept no record of her gifts. About the only source of information as to gifts was the defendant and his wife. They had previously been fully and completely interrogated as to gifts and inheritances. The testimony of the brother-in-law and sister-in-law as to gifts to the defendant or his wife is in the record for what it is worth. Such testimony is indefinite and incomplete as to time and amount of gifts. The jury could give it such consideration as they thought it was entitled to. Further, since Mrs. Wander died in 1948, her gifts could not under this record be a possible source of cash for the contributions claimed in 1949 and 1950.

■ 7. Defendant claims he understated his depreciation, and the court erred in rejecting testimony on this issue. The only offered testimony we find at the record reference in the defendant's brief is testimony as to when each of the properties was built based upon information acquired from the public records and as to the remaining useful life of the

properties after 1947. There was no showing that the defendant owned the properties when they were built or that he acquired the properties in 1947. The objection to such testimony was properly sustained as the date of acquisition by the taxpayer is the proper starting point for depreciation. 26 U.S.C. §§ 23(*l*) and (n), 113(a) and (b), and 114, Internal Revenue Code of 1939.

 Objection upon the ground that the issue was not involved in this case was made to allowing Hanley to testify as to the defendant's son's income. The exemption claimed for the son was not in issue in the case, and when testimony had previously been offered as to the son's income, the court excluded the testimony upon objection and advised the jury to give no consideration to the subject. Upon cross examination of Government witness Hanley with reference to the son's income, defendant's counsel had asked, "It involved only a small amount of money, didn't it?" On redirect examination the witness was permitted to state the amount of the son's income. We do not believe the court abused its discretion in permitting this testimony upon the basis that the field had been opened by the defendant. Upon appeal, for the first time, an additional objection is raised that the method of proving the son's income was improper. As this objection was not urged in the trial court it can not now be considered.

 Hanley was allowed to identify a transcript of Mrs. Zacher's bank records which he testified had been prepared by a fellow agent under Hanley's direction, control, and supervision. To sustain the admissibility of the transcript the Government relies upon the Federal Shop Book Rule, 28 U.S.C. §§ 1732 and 1733, as applied in United States v. Mortimer, 2 Cir., 118 F.2d 266. The defendant relies upon Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L. Ed. 645, and Hartzog v. United States, 4 Cir., 217 F.2d 706. In the Palmer case the court was not convinced that the investigation of accidents by railroad investigators was sufficiently in the regu-

lar course of business of the railroad to permit the introduction of statements obtained in the course of the investigation. The facts in the Palmer case are clearly distinguishable from the facts that we are now considering. The teaching of the Palmer case, however, is that the Federal Shop Book Rule should be applied with caution.

In the Mortimer case charts were offered to prove default in taxes upon a high proportion of mortgaged property. The charts were prepared by an accountant from information assembled under his supervision by several aides. The charts were admitted upon the verification of the accountant, the court stating in part, 118 F.2d at page 270:

"On principle we cannot see why an accountant's aides whose job it is to take off material from the public records so that their chief may construct his tables and charts accurately are not acting in the regular course of business. * * * Likewise, accuracy is the life of an accountant's business, but the multitude of records cannot be checked by any one person alone. And here the system followed was not merely likely to insure accuracy, but apparently did so, since the other side, far from discrediting the records, actually supported them. The trend in the courts is unmistakably to follow the methods of ordinary business in assuming the validity, until discredited, of records daily accepted in commercial routine. * * * *"

In the Hartzog case the worksheets of a deceased agent in a tax case were not admitted. The basis for the rejection is stated by the court as follows [217 F.2d 710]:

"On the record presented to us, it does not appear that the worksheets prepared by Baynard were prepared under such circumstances as will provide a guarantee of trustworthiness. These worksheets were made in preparation for this prosecution; they were Baynard's personal working papers, were the product of his

judgment and discretion and not a product of any efficient clerical system. \* \* \*"

With reference to the Mortimer case the court states:

"\* \* \* The Second Circuit quite properly held that the testimony of a supervisory agent alone is sufficient where he has had complete supervision and direction of preparation of the evidence which he offers. \* \* \*"

The court in the Hartzog case felt that the Mortimer case did not control because of differences in the factual situation in the two cases, principally that in the Hartzog case the agent was required to exercise discretion and judgment as to the classification of the information.

■ We feel that our present case comes close to the factual situation in the Mortimer case. Here the agent who prepared the transcript merely copied and listed the various items of receipts and disbursements. He listed all such items shown by Mrs. Zacher's records. No classification of the various items as to whether they were capital or income was involved. His duty was merely to copy all items as they appeared on the record. Hanley himself checked the defendant's account. Defendant and his wife issued many checks to each other so that this afforded a cross check on the records prepared by Hanley and the other agent. Further it appears that Mrs. Zacher's bank records were still readily available to the defendant and could easily have been produced if desired to demonstrate any error that might have been made in listing such items. Under the record here made we find no abuse of discretion in receiving the transcript of Mrs. Zacher's bank account upon Hanley's verification.

■ The defendant likewise objects to the hypothetical question propounded to agent Wallace pertaining to the income tax due under circumstances disclosed by the hypothetical question. We believe that there was evidence tending to prove the facts assumed in the question, and that it included the material facts which the evidence tended to prove and which had a bearing upon the subject concerning which the expert was asked to testify. The defendant has not demonstrated any error here. We are satisfied that the trial court committed no error in overruling the objection. See Guzik v. United States, 7 Cir., 54 F.2d 618.

■ 8. Lastly, defendant urges that the court committed error in refusing to give some of his requested instructions, particularly in that the instructions given did not sufficiently elaborate upon the net worth theory. The defendant concedes that the instructions of the court were correct as far as they went. We have heretofore held that this is not a net worth case. We have examined the requested instructions and also the instructions given, and are satisfied that the court by its instructions fairly submitted the case to the jury.

We have fully considered the errors urged by the defendant. We find no prejudicial error such as would warrant a reversal. We believe that the defendant has had a fair trial.

The judgment is affirmed.