The CENTRAL RAILROAD COMPANY
of New Jersey, Plaintiff-Appellee,

v.

JULES S. SOTTNEK CO., Inc., Sottnek
Terminal Corporation, Defendants-Appellants and Third Party Plaintiffs, New
York Dock Company, Defendant.

No. 277, Docket 24619.

United States Court of Appeals
Second Circuit.

Argued April 15–16, 1958.

Decided July 15, 1958.

Theodore A. Kelly, New York City
(Vincent E. McGowan, New York City,
on the brief), for plaintiff-appellee.

Seymour Simon, New York City (Richard T. Graham and Raymond E. Stefferson, New York City, on the brief), for defendants-appellants.

Before CLARK, Chief Judge, and LUMBARD and WATERMAN, Circuit Judges.

LUMBARD, Circuit Judge.

This is an appeal from a judgment entered on the verdict of a jury by Judge Murphy, Southern District of New York, awarding the plaintiff $9,636 for damages to its scow and $383 for loss of the personal effects of its scow master caused by a fire allegedly ignited through the negligence of the defendants. A third party complaint against the New York Dock Company was dismissed and no appeal is taken from that order.

On April 24, 1951, the plaintiff's scow, CRR 230, was tied up to the bulkhead between Piers 30 and 32 in Brooklyn, New York. The stern of the scow was approximately 6 feet north of the open storage area on Pier 32. The pier was owned by the New York Dock Company and was leased to the defendant, Sottnek Terminal Corporation. The other defendant, Jules S. Sottnek Co., Inc., was in possession of the dock where it was conducting stevedoring operations. On the day of the fire and during the previous night stevedores in the employ of the defendant, Jules S. Sottnek Co., Inc., were unloading naphthalene, packaged in burlap bags, from the M/V Gudrun Maersk. These bags were piled in two pyramids on the Pier 32 open storage area. One of the piles, containing some 3,000 bags, was close to the stern of the plaintiff's scow; the other, a much smaller pile, was located on the bulkhead adjacent to the starboard bow of the scow. Between the two pyramids of naphthalene and at the corner of the slip was a pile of cork.

At about 1:50 P.M. on April 24, 1951 a fire broke out in the larger pile of naphthalene and destroyed it and the pile of cork. The fire spread to the stern of the scow causing the damages for which recovery is sought in the present action.

The plaintiff alleged that the fire was caused by the carelessness of stevedores employed by the defendant, Jules S. Sottnek Co., Inc., in that they were smoking while working around the naphthalene. The defendants, on the other hand, maintained that the fire was caused by spontaneous combustion in the naphthalene pile. The jury found for the plaintiff and the defendants now seek to upset the verdict and the judgment entered thereon by the District Court, claiming that there was insufficient evidence in the record to sustain the jury's findings of negligence and damages.

Assuming for the moment that the negligence of the defendant was proved, we turn first to the question of damages.

On April 30, 1951, after the cargo had been discharged from the scow, a survey was held on board the CRR 230 in a repair yard owned jointly by three railroads, including the plaintiff, Central Railroad Company of New Jersey. Both the plaintiff and defendant were represented at the survey and the agent of the M/V Gudrun Maersk, from which the naphthalene had been discharged, sent Mr. William R. Bagger to represent it. On the survey it was found that the end planking, sheathing, rake fenders, corner fenders, side planking, rail log, bumper guards and main decking of the vessel's stern had been burned and the cabin had also been destroyed. Mr. Bagger refused to sign the survey because it was his opinion that the bumper logs did not have to be replaced as they had only been scorched, and because the cost of repairs exceeded his estimate of the value of the scow.

At the trial Mr. Bagger testified that the cost of repairs as agreed on by the surveyors was $9,636. The survey itself, though marked for identification, was not introduced into evidence. Mr. Bagger further testified that he had made another survey of the vessel in 1957 and he had found that some of the repairs called for by the survey had not been made, and that it was his opinion that the reasonable cost of the repairs actually made was $6,964. The appel-

lant argues that the recovery should be limited to this latter amount.

It is clear that the applicable measure of general damages in this case is the difference between the market value of the scow immediately before and immediately after the injury. See O'Brien Bros., Inc., v. Steamtug Helen B. Moran, 2 Cir., 1947, 160 F.2d 502. If complete repairs had been carried out, recovery would have been limited to their cost, The Hygrade No. 24 v. The Dynamic, 2 Cir., 1956, 233 F.2d 444, but this approach is only a practical substitute for the "diminution of market value" rule. The scow owner is not required to make repairs if he is to recover.

The damages arrived at by the jury in using this test finds support in the evidence. First, Mr. Bagger testified to the amount arrived at in the survey, that the survey was correct in all respects save one, and that he refused to sign it solely because of a difference in opinion regarding the item of the bumper logs and because he thought the scow was not worth the repairs. Secondly, there was evidence in the form of bills, qualified by the clerk under whose supervision they were drawn up, which indicated that the actual cost of repairs exceeded the survey estimate. Finally, the plaintiff called its former superintendent of floating equipment who testified that in the discharge of his duties he was often called upon to evaluate equipment and that the CRR 230 was worth $15,000 before the fire and $4,000 after. This evidence amply supports the jury's determination of damages.

We then come to the proof regarding negligence. The defendants maintain that the fire was caused by spontaneous combustion and produced as a witness a chemist who testified that spontaneous combustion possibly was the cause. A cargo checker in the defendant's employ also testified that while he was standing near the naphthalene he saw a trickle of liquid suddenly shoot out from the floor of the scow and burst into flame.

On the other hand, James Rugar, captain of the damaged scow, testified that he saw stevedores and crane operators smoking in the vicinity of the naphthalene during the noon hour. In this he was corroborated by Captain Barbir of the scow Solvay which had been anchored in the slip in front of the CRR 230. Captain Barbir further testified that he had seen men smoking about the bags less than 20 minutes before the fire started. From this evidence the jury could infer that carelessness while smoking caused the fire. See United States Lighterage Corp. v. Peterson Lighterage & Towing Co., 2 Cir., 1944, 142 F.2d 197. Indeed both of the city Fire Marshals, one having been called by each side, testified that it was their opinion that the fire was caused by smoking negligence.

The jury thus had evidence before them as to both of the explanations advanced. Under these circumstances, it was the jury's province to determine how the fire started and their verdict for the plaintiff must stand.

Finally, the appellant challenges the admission into evidence of a report of a New York City Fire Marshal in which he stated the cause of the fire to be "smoking carelessness." The report goes further to state that an employee of Jules S. Sottnek Co., Inc. stated that he had frequently seen men smoking when working on the bulkhead. The Fire Marshals testified that they spoke to some twenty people at the fire scene, but their report listed only one who mentioned smoking on the pier, and he denied at the trial the statements attributed to him in the report. The report was received in evidence under the statute permitting the introduction of records kept in the regular course of business. 28 U.S.C.A. § 1732.

Under the circumstances of this case, we hold that the reception of the record was not reversible error. Here, plaintiff called Fire Marshal Canty, the maker of the report, who testified, without objection, to his conclusion that the fire was caused by smoking carelessness.

Defendants called as its own witness Chief Fire Marshal Scott, who participated with Canty in the investigation conducted by the New York City Fire Department to determine the origin of the fire. He, too, on direct examination by defendants' counsel, testified that as a result of his investigation he believed the fire to have been caused by smoking carelessness. Thus the reception of the report was merely cumulative.

Not having objected to the testimony of the Fire Marshals, and indeed calling one of them as their own witness, appellants cannot claim that the admission of the parallel report is reversible error.

■ Whether we would have come to the same result absent the Fire Marshals' testimony is another question which we do not reach in disposing of this appeal. However, it should be noted that the theory underlying the statute admitting business records as an exception to the hearsay rule, is that they have the "earmarks of reliability" or "probability of trustworthiness." Palmer v. Hoffman, 1943, 318 U.S. 109, 63 S.Ct. 477, 480, 87 L.Ed. 645. The Supreme Court there ruled that business records reflecting the day to day operations of the enterprise, and which were relied upon on the conduct of the business, did have an inherent probability of trustworthiness; but a statement in an accident report, even though taken regularly in the conduct of the business, was not within the business records statute.

The federal courts generally apply the more liberal evidentiary rule between the federal and state rules so as to favor the reception of evidence. Rule 43(a) Federal Rules of Civil Procedure, 28 U.S.C.A. The question then is whether the report could be received under either rule.

It seems clear that the Fire Marshal's report would not be admissible in New York courts. New York Civil Practice Act, § 374-a; Johnson v. Lutz, 1930, 253 N.Y. 124, 170 N.E. 517; Williams v. Alexander, 1955, 309 N.Y. 283, 129 N.E.2d 417; Cox v. State, 1958, 3 N.Y. 2d 693, 171 N.Y.S.2d 818.

■ The federal rule would require the same result. The salutary purpose underlying the business record statute is " * * * to bring the realities of business and professional practice into the courtroom in usable form." Korte v. New York, New Haven & Hartford R. Co., 2 Cir., 1951, 191 F.2d 86, 91, certiorari denied 342 U.S. 868, 72 S.Ct. 108, 96 L.Ed. 652. Although in Pekelis v. Transcontinental and Western Air, Inc., 2 Cir., 1951, 187 F.2d 122, 23 A. L.R.2d 1349, certiorari denied 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374, we sanctioned the admission of the defendant airline's accident investigation reports, the reports there were offered by the plaintiff, not the entrant, and the reports were against the airline's interest when made and were based on informants [e. g. the pilot, co-pilot, ground-crew, etc.] who were under a duty to report to the investigating board. Thus the safeguards to reliability were amply present.

We have also cautioned that not every record is admissible under the statute, when we said that " 'multiple hearsay' is no more competent now than single hearsay was before." United States v. Grayson, 2 Cir., 1948, 166 F.2d 863, 869. The trial judge must exercise caution to be sure that a document offered under this statute has an inherent probability of trustworthiness.

In any event, the reception of the report in this case did not constitute error.

Affirmed.

CLARK, Chief Judge (concurring in the result).

I concur in the affirmance and in the opinion herewith except for the dictum that the New York City Fire Marshal's report was not admissible in evidence. We need not decide that here; if pressed to a decision I should hold it admissible, the objections going to its weight, rather than its admissibility. Pekelis v. Transcontinental & Western Air, Inc.,

2 Cir., 187 F.2d 122, 23 A.L.R.2d 1349, certiorari denied Transcontinental & Western Air, Inc., v. Pekelis, 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374; Korte v. New York, N. H. & H. R. Co., 2 Cir., 191 F.2d 86, certiorari denied New York, N. H. & H. R. Co. v. Korte, 342 U.S. 868, 72 S.Ct. 108, 96 L.Ed. 652.