**Addie Mae MILLER, Plaintiff,**

v.

**Joseph WEINER, Defendant.**

**Civ. A. No. 68–21.**

United States District Court
D. South Carolina,
Charleston Division.

Heard March 28, 1969.

Decided April 18, 1969.

Ira J. Bloom, of Pritchard, Myers & Morrison, Charleston, S. C., for plaintiff.

Joseph R. Young, of Young, Clement & Rivers, Charleston, S. C., for defendant.

HEMPHILL, District Judge.

The court considers defendant's post-trial motion for judgment non obstante veredicto or for a new trial in the alternative. Counsel for respective parties were heard in oral argument at Charleston, March 28, 1969.

Defendant's first ground is that the court erred in refusing his motion for a directed verdict when the only reasonable inference to be drawn from all of the testimony was that this was an unavoidable accident and that there was no negligence, recklessness or wilfulness on the part of defendant, which proxi-

mately caused plaintiff's injuries, and it was an unavoidable accident. Counsel did not abandon this ground in his oral argument, but he did not devote a major portion of his time or attention thereto. The motion is denied, for, in the opinion of this court, there was abundant evidence of negligence on the part of the defendant which warranted submitting this case to the jury. The court's consideration includes but is not limited to: (1) Defendant's own testimony that he was following the vehicle ahead so closely that a stream of water was being thrown on his windshield, which bears on the issue of his following too close [1]; (2) it is undisputed that defendant turned to his left, which bears on the issue of whether or not he drove his automobile to the left of the center line [2]; (3) defendant's own testimony that he turned off the ignition key during the skid, thereby effectively making his vehicle much more difficult to turn and/or brake, thus raising a jury issue as to his maintaining proper control; and, (4) aside from violations of rules of the road, the jury could well determine, under the testimony, that the cause of conduct of defendant was negligence of such nature as to proximately cause the

collision which resulted in plaintiff's injuries.

Defendant's second ground for a new trial is of more serious concern. He argues that this court committed grave and fatal error in excluding certain reports tendered by one of defendant's witnesses. Introduction was attempted in support of the affirmative defense of unavoidable accident. The records consisted of thirty reports of the Charleston (S. C.) City Police, taken over a period of two years before and after the date of the accident involved and showed fourteen accidents under rainy conditions, and seven accidents in which one of the vehicles involved skidded across the center line. Defendant claimed authority under 28 U.S.C. Section 1732(a), which reads:

Record made in regular course of business; photographic copies.

(a) In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any busi-

---

1. Section 46–293, S.C.Code 1962 Anno. provides: Duty of driver of such vehicle.—The provisions of §§ 46–291 and 46–292 shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.

2. Section 46–386 and Section 46–388, S. C.Code, 1962, Anno. provides:

Limitations on overtaking on the left. —No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken.

In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction.

Section 46–388 provides: Further limitations on driving to left of center of roadway.—No vehicle shall at any time be driven to the left side of the roadway under the following conditions:

(1) When approaching the crest of a grade or upon a curve in the highway where the driver's view is obstructed within such distance as to create a hazard in the event another vehicle might approach from the opposite direction;

(2) When approaching within one hundred feet of or traversing any intersection or railroad grade crossing; or

(3) When the view is obstructed upon approaching within one hundred feet of any bridge, viaduct or tunnel.

The foregoing limitations shall not apply upon a one-way roadway.

ness, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.

■ This court recognizes the facility of Section 1732 as the Federal shop book statute [3], embodying faith in the necessity and trustworthiness [4] of regular bookkeeping or shop entries made in the course of business. South Carolina had such a statute and so did North Carolina [5]. Such statutes constitute an exception to the hearsay rule, and recognize and compensate for the unavailability of the actual witness to authenticate the entry or offer formal proof.[6] Such statutes, however, do not render admissible all things made a matter of record in the books of the business. They must be competent and relevant.[7]

Projected into this court's consideration of relevancy and competency is the nature of the records offered. Traffic reports are made up by an officer from reports of others, opinions of others, opinions of the officer investigating, opinion of the officer reporting, or, if an individual is making the report, from statements and opinions of that individual. South Carolina has recognized the compromise of multiple hearsays in such reports as evidenced by statutes relative thereto:

Section 46–328.1 provides:

Reports not to be used as evidence of negligence in civil actions.—None of the reports required by §§ 46–326 [8] to 46–328 shall be referred to in any way or be any evidence of the negligence or due care of either party at the trial of any action at law to recover damages.

Section 46–333 provides:

Accident reports confidential; use; permissible disclosures.—All accident reports made by persons involved in accidents or by garages shall be without prejudice to the individual so reporting and shall be for the confidential use of the Department or other State agencies having use for the records for accident prevention purposes. The Department may disclose the identity of a person involved in an accident when such identity is not otherwise known or when such person denies his presence at such accident and may upon request disclose to any person who has suffered injury to his person or property any information contained on any report regarding the existence of insurance or other exceptions as required by § 46–721. No such report shall be used as evidence in any trial, civil or criminal, arising out of an accident, except that the Department shall furnish, upon demand of any person who has, or claims to have, made such a report or upon demand of any court, a certifi-

3. Barron and Holtzoff (Wright), 1961 Ed. Vol. 2B page 254, Evidence § 971.

4. Hartzog v. United States, 217 F.2d 706, 710 (4th Cir. 1954).

5. See: Wigmore on Evidence, Third Ed. (1940), Vol. 5, p. 349—Regular Entries: History § 1518, Note 10.—See also p. 359 (Sec. 1519).

6. Ibid. p. 350.

7. Continental Baking Co. v. United States, 281 F.2d 137, 148 (6th Cir. 1960).

8. Section 46–326 provides: Immediate report of accidents resulting in personal injury or death.—
The driver of a vehicle involved in an accident resulting in injury to or death of any person shall immediately by the quickest means of communication, whether oral or written, give notice of such accident to the local police department if such accident occurs within a municipality, otherwise to the office of the county sheriff or the nearest office of the South Carolina Highway Patrol. (Other statutes referred to are of similar import.)

cate showing that a specified accident report has or has not been made to the Department solely to prove a compliance or a failure to comply with the requirement that such a report be made to the Department.

The General Statutes of North Carolina contain similar provisions. It is apparent these states have realized the lack of trustworthiness in an accident report.

█ In the case at bar, the accident reports offered do not have those earmarks of reliability or the probability of trustworthiness that would warrant their acceptance as an exception to the hearsay rule.[9] This court follows the language of the Second Circuit Court of Appeals in passing judgment on the inclusion of accident reports under the tent of the Federal Shop Book Statute (1732):

> [T]he theory underlying the statute admitting business records as an exception to the hearsay rule, is that they have 'earmarks of reliability' or 'probability of trustworthiness.' * * * The Supreme Court * * * ruled that business records reflecting the day to day operations of the enterprise, and which were relied upon on the conduct of the business, did have an inherent probability of trustworthiness; but a statement in an accident report, even though taken regularly in the conduct of the business, was not within the business records statute.[10]

This court has indicated that the sources of information relied on and the method and circumstances of preparation are not such as to indicate the trustworthiness of the reports.[11] Further authority for this reasoning is found in Hartzog v. United States, 217 F.2d 706 (4th Cir. 1954); New York Life Ins. Co. v. Taylor, 79 U.S.App.D.C. 66, 147 F.2d 297 (1945).

In *Hartzog* the Court rejected worksheets of a deceased Deputy Collector of Internal Revenue, in the prosecution of a taxpayer, noting:

> [I]t does not appear that the worksheets prepared by Baynard were prepared under such circumstances as will provide a guarantee of trustworthiness. * * * There was no opportunity for anyone * * * to tell when an error or misstatement had been made.

This court follows the Fourth Circuit reasoning in considering the thirty accident reports.

█ There is no conflict between the Federal statute and the State statutes. The Federal statute contemplates business records made on a day to day basis, New York Life Ins. Co. v. Taylor, supra, such as hospital records. The accident reports are not business records (1) regularly made in the course of a business, (2) nor is it a part of the regular course of *a business* [emphasis added] to record the event or transaction at or near the time of occurrence. Thus it falls within the exclusion set forth in Missouri Pacific Railroad Co. v. Austin [12], where Dunn and Bradstreet records were disallowed because of lack of proof of circumstances showing *that* regularity and routine which give rise to trustworthiness. A ruling to the contrary is found, however, in Bridger v. Union Railway Co., 355 F.2d 382, 391 (6th Cir. 1966), in which the court accepted as "business records" Police Department reports of four prior accidents at the railroad crossing which was of the injury out of which the litigation arose. In contrast, United States v. Graham, 391 F.2d 439 (6th Cir. 1968), holds a police report in-

9. The trial judge must exercise caution to be sure that a document offered under this statute has an inherent probability of trustworthiness, Central R. R. Co. v. Jules S. Sottnek Co., 258 F.2d 85, 88 (2nd Cir. 1958).

10. Central R. R. Co. v. Jules S. Sottnek Co., 258 F.2d 85, 88 (2nd Cir. 1958).

11. See the excellent discussion in Vol. 45 Virginia Law Review, pp. 717–730, entitled, "Criteria for admissibility under the Federal Business Records Act."

12. 292 F.2d 415, 420 (5th Cir. 1961).

admissible, under the Federal statute, to prove the fact that an automobile was stolen. As a practical matter, South Carolina has legislated especially in negligence cases.[13] Perhaps the legislature realized the probability of multiple hearsay as contemplated in United States v. Grayson, 166 F.2d 863, 869 (2nd Cir. 1948).[14]

Finally, these reports fall within the ambit of Palmer v. Hoffman, 318 U.S. 109, 113, 63 S.Ct. 477, 480, 87 L.Ed. 645, wherein Mr. Justice Douglas explained the shop book statute (now 28 U.S.C. section 1732):

> Any business by installing a regular system for recording and preserving its version of accidents for which it was potentially liable could qualify those reports under the Act. The result would be that the Act would cover any system of recording events or occurrences provided it was 'regular' and though it had little or nothing to do with the management or operation of the business as such. Preparation of cases for trial by virtue of being a 'business' or incidental thereto would obtain the benefits of this liberalized version of the early shop book rule. The probability of trustworthiness of records because they were routine reflections of the day to day operations of a business would be forgotten as the basis of the rule. See Conner v. Seattle, R. & S. Ry. Co., 56 Wash. 310, 312–313, 105 P. 634 [25 L.R.A.,N.S., 930]. Regularity of preparation would become the test rather than the character of the records and their earmarks of reliability (Chesapeake & Delaware Canal Co. v. United States, 250 U.S. 123, 128–129 [39 S.Ct. 407, 408–409, 63 L.Ed. 889]) acquired from their source and origin and the nature of their compilation. We cannot so completely empty the words of the Act of their historic meaning. If the Act is to be extended to apply not only to a 'regular course' of a business but also to any 'regular course' of conduct which may have some relationship to business, Congress not this Court must extend it. Such a major change which opens wide the door to avoidance of cross-examination should not be left to implication. Nor is it any answer to say that Congress has provided in the Act that the various circumstances of the making of the record should affect its weight not its admissibility. That provision comes into play only in case the other requirements of the Act are met.

This court notes that the opinion made reference to Judge Hand's opinion in *Grayson*, supra.

Upon consideration of all the facts and circumstances this court is of the opinion that the records sought to be introduced do not meet the tests, or come within Congressional intent, of the shop book statute [28 U.S.C. Section 1732]. The second ground of defendant's motion is denied. The entire motion for judgment notwithstanding the verdict, or, in the alternative, a new trial, is denied.

And it is so ordered.

---

13. Section 46–328.1, S.C.Code 1962 Anno., supra.

14. "We have also cautioned that not every record is admissible under the statute, when we said that ' "multiple hearsay" is no more competent now than single hearsay was before.' " (Opinion by Hand.) 258 F.2d 88.