Chief Judge Conway.
Plaintiff-appellant Alice M. Kelly, a 65-year-old woman, was, prior to June 4, 1950, in financial difficulties. She could not maintain the house she owned at *427 813 Greenwood Avenne in Brooklyn. She approached the defendant-respondent, a friend, and asked his assistance. There followed an agreement by which plaintiff was to convey her house to defendant in return for which he was to pay all of her debts and to allow her to continue to reside in her two rooms on the parlor floor of the premises, rent free. Plaintiff claims that she was to be given rent-free occupancy for her lifetime; defendant’s version of the agreement is that she was to be permitted to live there only “ as long1 as the Department of Housing and Building would not bother him because of her living there.” That is the gist of the controversy. Plaintiff deeded the premises to defendant, who thereafter paid her debts. The agreement, whatever it was, was not put in writing.
Beginning on August 27, 1957, defendant had difficulties with the Department of Housing and Buildings. Three families, if plaintiff be considered one, occupied the house, making it a multiple dwelling unlawfully. Three families had occupied it at all times at and after its deeding to defendant, but it was claimed that it had become necessary for one of them to be evicted. Defendant chose plaintiff, the nonpaying occupant, and brought a summary proceeding to evict her, while plaintiff on her part brought an action to have the deed reformed to add “ Subject to the life tenancy of Alice M. Kelly in two rooms on the second floor of said premises.” After consolidation of the eviction proceeding and the reformation action, the latter was dismissed after trial and the plaintiff was ordered evicted. The Appellate Division has affirmed.
Plaintiff was and is a welfare beneficiary and, as such, the Department of Welfare maintains a file in her case. On several occasions department personnel have had contact with the defendant. Two of them are pertinent here. According to department records (held inadmissible below), its representative had a telephone conversation with the defendant on July 21, 1950, and made a personal visit to him on October 23, 1952. Memoranda of conversations had with him on each occasion were made by the person supervising plaintiff’s welfare file and incorporated therein. In both of them defendant stated that he had agreed to allow plaintiff to occupy the premises rent free for life; in neither did he qualify his statement with the proviso that her occupancy could last only as long *428 as the noninterference of the Housing Department. The two excluded entries read as follows:
“ 7/21/50-
‘ ‘ Phoned So. 8-8647 and spoke with Mr. Wasserman who advised as above-stated he had been advancing Miss K. a dollar or two daily for food needs but cannot continue this as he has his own family to support and his income will not warrant this added expenditure. If and when he acquires property, he will permit Miss K. to remain there rent free the remainder of her life — she will occupy the 2-room apartment that has no cooking facilities. She will eat all her meals in the restaurant (no cooking).”
“ 10/23/52-
‘ ‘ Collateral to Mr. Wasserman.
“ We visited Mr. Paul Wasserman at his pharmacy at 1291 Prospect Avenue. Telephone [No.] SO 8-8904. He stated that he would permit Miss Kelly to live in her Apt. rent free for her lifetime. This includes electricity. He stated there was no cooking facilities since this would be a violation. He said that Applicant ate all of her meals out and that he loaned her the money to eat when she did not have any. He thought she woed [sic] him about $12 or $15 dollars.”
Without the excluded entries, the record shows the plaintiff making contradictory statements while the defendant adheres to a consistent position. Were the entries admitted, the record would manifest inconsistencies on the part of both litigants. In view of the circumstances attending the transaction, a contrary result may well have ensued from such foundation. Thus if there was error in excluding the entries, it must be deemed prejudicial.
We are of opinion that their exclusion was error. It is not clear whether the ruling was grounded upon the supposition that the statements were hearsay, or upon the fact that they were sought in evidence as contradictory statements made by defendant out of court for the purpose of impeaching him. If the latter, the evidence was admissible to impeach defendant even though he was the plaintiff’s witness. “ When * * * it is said that one cannot impeach his own witness by contradictory statements made out of court, this statement must be limited to the case of a witness who is not the adverse *429 party.” (Koester v. Rochester Candy Works, 194 N. Y. 92, 97-98.)
However, it is more likely that the exclusion of the records was founded upon their being hearsay. When defendant stated, with reference to the questioned entries, that he was “ going to object to anything that may be hearsay ”, the Referee said that he would not “pay any attention to anything that is hearsay. ’ ’
But even if it be assumed that the matter offered was hearsay, still: “ The purpose of section 374-a of the Civil Practice Act was to overcome the objection of the hearsay rule ” (Matter of Coddington, 307 N. Y. 181, 195 [emphasis supplied]).
One Frances Reynolds testified that she was a “ social investigator ” for the Welfare Department, and as such was “ in charge of the welfare case of Miss Alice Kelly ”; that the department kept records of telephone calls and visits made to plaintiff and those connected with her. It may be noted that the department is required by law to maintain such records (Social Welfare Law, §§ 80, 132; Regulations of N. Y. State Dept, of Social Welfare, § 1.36, subd. a, par. [2]; § 1.39). It was also established that the disputed entries had been made by the department employee who first interviewed plaintiff. Section 374-a of the Civil Practice Act makes admissible in evidence “ a memorandum or record of any act, transaction, occurrence or event * * * if * * * made in the regular course of any business ’’ as long as “it was the regular course of such business to make such memorandum or record at the time * * * or within a reasonable time thereafter. ’ ’ There can be no doubt but that the alleged statements of defendant, which are most germane to the question of plaintiff’s shelter, were the Department of Welfare’s business, and the practice (enjoined by law in this case) of maintaining records on those receiving welfare support qualified those records for admissibility under section 374-a.
It is true that the person who made the memoranda, since not testifying, could not be cross-examined. Nevertheless, in Johnson v. Lutz (253 N. Y. 124, 128), we said that, where the entrant has the duty of drawing the memorandum, section 374-a permits it “to be received in evidence without the necessity of calling as witnesses all of the persons who had any part in making *430 it ”. It was also indicated that the proffered matter might he objectionable on the additional ground that there was “ no evidence that she [the welfare worker] recognized the voice of the one with whom she spoke.” But that is not basis for the exclusion of records; rather may it be taken into consideration only after their admission as affecting the weight to be given them. The statute is explicit thereon, providing, after the prerequisites above set forth have been met, that “All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility.” Moreover, whatever effect voice recognition might be given with regard to the telephone call of July 21, 1950, it has no bearing on the other excluded memorandum, which is a record of the in-person visit by the investigator to defendant on October 23, 1952.
The judgment of the Appellate Division should be reversed, and a new trial granted, with costs to abide the event.
Judges Desmond, Dye, Fuld, Feoessel, Van Voorhis and Burke concur.
Judgment reversed, etc.