AUGUST ZAULICH, Respondent, *v.* THOMPKINS SQUARE HOLDING
Co., INC., Appellant.

First Department, May 10, 1960.

*Alexander E. Rosenthal* of counsel upon appeal (*Irving Segal*, attorney), for appellant.

*Seymour L. Colin* of counsel upon appeal (*George A. Grabow* with him on the brief; *Seligson & Rothman*, attorneys), for respondent.

VALENTE, J.   Plaintiff was injured on May 9, 1956 when he fell to the street from the second-floor landing of a fire escape on the outside of a multiple dwelling owned by defendant at 418–420 East 6th Street, New York City.   Plaintiff's employer was engaged to paint the outside window frames of the building and plaintiff was assigned the task.   At the time of the accident he was descending from the third-floor landing — having finished the painting of the windows there — on his way to the second floor.   He testified that when both of his feet were on the bottom step of the stairway, leading from the third to the second-floor landing, he stepped down with his right foot, when something struck him and caused him to fall from the fire escape.

Plaintiff claimed not to know whether, in descending, his foot had touched a rung of a hanging ladder attached to a plate fastened to the third-floor fire escape.   However, he did testify that it was the hanging ladder which struck him on the right instep causing him to fall to the sidewalk about 13 or 14 feet below.   Having had strict orders not to touch the hanging ladder, plaintiff testified he had not used it, nor was he going to use it at the time of the accident.

One Anthony Parisi, a sanitation worker, whose garbage collecting truck was in front of the building at East 6th Street, testified he saw plaintiff coming down the fire escape stairs backwards, carrying a paint pail in his left hand and a paint brush in his right hand, when the toes of plaintiff's right foot struck a bar of the hanging ladder, and the ladder fell down and hit plaintiff on the toes, causing him to be thrown to the sidewalk.

Parisi further testified that, after helping plaintiff, he, Parisi, picked up the plate and bolts that held the hook by which the ladder was secured to the third-floor fire escape, and which he had seen falling to the street as the ladder hit the sidewalk. According to Parisi, the bolts were broken in about the middle and "were rusted almost completely through"; and the threads on the nuts were rusted. Strangely enough, Parisi claims to have returned the plate and the bolts to the sidewalk. He did not turn them over to anyone, and they were not produced at the trial. On cross-examination Parisi admitted that he had spoken to no one about the accident between May 9, 1956, the day of the occurrence, until a week or two before the trial on September 21, 1959, and that he had made no record of the events at any time but was relying strictly on his memory. Although present at the scene when a police officer arrived, Parisi had not offered his name to the officer as a witness to the accident. (Cf. *Johnson* v. *Mattus,* 10 A D 2d 259.)

Patrolman Moran, who arrived in a radio car while plaintiff was still lying on the sidewalk, testified that the plaintiff at that time told him that he, plaintiff, had been painting the window frames on the second floor, and when he had stepped on the ladder, a metal bar holding the ladder had given way, causing him to fall to the street. Patrolman Moran further testified that he had inquired of the people who were present whether there were any witnesses to the accident, but no one gave his name; that he never saw Parisi at the scene, and that he did not see any bolts, nuts or bars on the sidewalk at or near the area. Moreover, the police officer said he had made an entry of what had transpired in his memorandum book which he was required by the rules of the Police Department to carry on his person. Thereafter, he telephoned the information to the lieutenant at the station house; and upon the patrolman's return to the station house, at the end of his tour of duty, the patrolman looked over the report and signed it. Both the police report and the police officer's memorandum book were offered in evidence by the defendant, but the trial court excluded them.

On cross-examination of plaintiff, it was established that, in a number of papers signed by plaintiff to process his workmen's compensation claim, plaintiff had indicated that the accident happened when plaintiff stepped on the hanging ladder of the fire escape. Plaintiff's own treating physician admitted that in response to a question on a workmen's compensation form, requiring a description in claimant's own words of the manner of the occurrence, he had written that "the hanging fire escape ladder gave way as I stepped on it."

The trial court submitted the case to the jury on the theory of the defendant's violation of a duty to plaintiff under section 200 of the Labor Law. It was the duty of the owner of the premises, the trial court charged, to provide plaintiff with a reasonably safe place to work. The jury was also instructed that, as a matter of law, the plaintiff had no right to use the drop ladder, and that, if it found that plaintiff attempted to descend by the drop ladder, plaintiff was not entitled to recover. The jury returned a verdict for plaintiff in the sum of $32,500.

The judgment should be reversed and a new trial granted because (1) the verdict was against the weight of the credible evidence; (2) the trial court failed adequately to charge the jury that a predicate for defendant's liability for a violation of section 200 of the Labor Law was knowledge, actual or constructive, of the condition complained of; (3) prejudicial error was committed in excluding from evidence the police report and the memorandum book of the police officer; and (4) the conduct of counsel at the trial precluded a fair and objective determination of the issues by the jury.

From the above discussion of the evidence, it is obvious that the critical and decisive issue of fact at the trial was whether plaintiff was using the drop ladder to descend at the time of the accident or had inadvertently or unintentionally touched it, causing it to fall upon his right foot. Moreover, it is apparent that the claim of inadvertent contact, made by the plaintiff at the trial, conflicted with plaintiff's earlier versions of the happening of the accident contained in his statements to the police officer at the scene of the accident and the workmen's compensation forms. That irreconcilable conflict completely undermines a verdict manifestly based on a conclusion that plaintiff was not using the drop ladder as a ladder at the time of the accident. (See *Goldstein* v. *Lentino Constr. Corp.*, 8 A D 2d 274; *Cavadi* v. *New York City Tr. Auth.*, 7 A D 2d 299.) Additionally, coupled with his sudden appearance at the trial, the testimony of plaintiff's witness, Parisi, strains credulity; particularly since he failed to offer his name as a witness to the police officer (see *Johnson* v. *Mattus*, 10 A D 2d 259, *supra*) and did not satisfactorily account for his unusual conduct with respect to the alleged rusted bolts and nuts after his claimed examination of them. (See *Bottalico* v. *City of New York*, 281 App. Div. 339.) Finally, it is not easy to accept Parisi's testimony that while he was preoccupied in collecting garbage on the street with two other men, he just happened to be looking up at the fire escape and noticed the ladder fall and strike plaintiff on the toe.

Apart from the weight of the evidence, the charge to the jury, insofar as it predicated defendant's liability on a violation of section 200 of the Labor Law, was inadequate in failing to instruct the jury that liability does not attach under that section in the absence of notice, either actual or constructive, of the condition complained of. In *Employers Mut. Ins. Co.* v. *Di Cesare & Monaco* (9 A D 2d 379, 383) it was pointed out that section 200 of the Labor Law is, in effect, a statutory codification of the common-law duty to furnish a safe place to work. In order to establish a violation of section 200 there must be notice, actual or constructive, of the condition about which complaint is made. (*Dittiger* v. *Isal Realty Corp.*, 264 App. Div. 279, 281–282, revd. on other grounds 290 N. Y. 492.) Even though the charge failed adequately to inform the jury of the requirement of notice, respondent nevertheless urges that, in the absence of an exception by defendant's counsel to that portion of the charge, appellant may not raise that question here. (Civ. Prac. Act, § 446; *Brown* v. *Du Frey,* 1 N Y 2d 190, 195; *Brenan* v. *Moore-McCormack Lines,* 3 A D 2d 1006.) It does appear, however, that in the course of defendant's motion to dismiss the complaint at the end of the plaintiff's case, defendant argued that plaintiff had failed to show any notice. In fact, plaintiff's counsel specifically contended — and the trial court adopted that view — that if there is a violation of section 200 of the Labor Law, there need be no proof of notice. The exception allowed to the ruling denying a dismissal of the complaint was under the circumstances sufficient to permit consideration of the question on this appeal. Despite the equivocal response of defendant's counsel to the trial court's question as to whether notice was required if section 200 of the Labor Law applied to the case, it is apparent from the entire colloquy on the motion to dismiss that defendant's right to urge the matter of notice on this appeal was sufficiently protected.

As to the admissibility of the police report, which Patrolman Moran had signed, as well as the officer's own memorandum book, it seems clear that the police report was admissible as a record made in the regular course of business pursuant to section 374-a of the Civil Practice Act. (See *Kelly* v. *Wasserman,* 5 N Y 2d 425.) It becomes unnecessary to decide whether the police officer's memorandum book was likewise admissible under section 374-a, since, in any event, both the report and the memorandum book were at least competent evidence to rebut the inference attempted to be created by plaintiff's counsel that the testimony of the patrolman was a recent fabrication. While respondent denies such purpose, the record of the examination

of Patrolman Moran supports an inference that his testimony was being assailed as a possible recent fabrication. Under those circumstances, the exclusion from evidence of the police officer's report and memorandum book to bolster the officer's testimony constituted prejudicial error. (*Moore* v. *Leventhal,* 303 N. Y. 534.)

It is distasteful and, in view of the experienced counsel who conducted the trial, it should have been unnecessary to allude to the final reason requiring a new trial. Unquestionably, the trial of the action was conducted in an atmosphere of unusual bitterness and hostility between counsel. There is no purpose in citing specifically the numerous incidents wherein counsel exchanged unhappy and violent expressions, and indulged in arguments which went beyond the limits of permissible vigorous presentation of their clients' interests. Counsel were indeed fortunate that the Trial Judge was indulgent enough to restrict his disapproval of their conduct to a mere reprimand. In *Kohlmann* v. *City of New York* (8 A D 2d 598) it was clearly expressed that parties to a trial have the right to have a case determined on the facts and law applicable thereto, and that misconduct of counsel which may substantially influence the outcome of the case cannot be condoned and will result in a reversal of a judgment. A member of the Bar is an aid to the administration of justice and his duty is to assist the court and the jury to arrive at a just and proper result. Where a trial is conducted in an atmosphere of bickering and exchange of prejudicial statements between counsel — as disclosed by the record herein — justice cannot be properly and fairly administered.

Since the case was at best a close one on the contested issues, the conduct of counsel on both sides was such as to render the trial unsuited for a dispassionate consideration of the evidence by the jury. Even though some of the outbursts may have been provoked, the retaliatory rejoinders went far beyond the scope of legitimate response. Canon 17 of the Canons of Professional Ethics adopted by the New York State Bar Association provides : "Clients, not lawyers, are the litigants. Whatever may be the ill-feeling existing between clients, it should not be allowed to influence counsel in their conduct and demeanor toward each other or toward suitors in the case. All personalities between counsel should be scrupulously avoided. In the trial of a cause it is indecent to allude to the personal history or the personal peculiarities and idiosyncrasies of counsel on the other side. Personal colloquies between counsel which cause delay and promote unseemly wrangling should also be carefully avoided." Instead of "scrupulously avoiding" the interdicted conduct,

counsel in this case persistently disregarded the salutary directions of the canon. It is hoped that the warning implicit in the criticism above will serve to prevent any future repetition of such unfortunate behavior. Unquestionably, however, the tactics of counsel introduced into the litigation an aspect which prevented a dispassionate consideration of the case by the jury, and in the interests of justice a new trial is imperative. (See *Cherry Creek Nat. Bank* v. *Fidelity & Cas. Co.,* 207 App. Div. 787, 790–791.)

The judgment should be reversed, on the law and on the facts, and a new trial granted, with costs to appellant to abide the event.

McNALLY, J. (dissenting in part). I concur for reversal, but vote to dismiss the complaint on the ground that the plaintiff has failed to establish actionable negligence under section 200 of the Labor Law.

RABIN, J. P., STEVENS and BERGAN, JJ., concur with VALENTE, J.; McNALLY, J., dissents in part and votes to reverse and dismiss the complaint.

Judgment reversed, on the law and on the facts, and a new trial ordered, with costs to appellant to abide the event.