Herbert Johnson, Appellant, v. Albert Plodzien, Appellee.

Gen. No. 48,167.

First District, Second Division.
May 23, 1961.
Rehearing denied June 30, 1961.

Morgan, Halligan & Lanoff, of Chicago (Edwin A. Halligan, Joseph T. McGuire and Samuel M. Lanoff, of counsel), for appellant.

Hubbard, Hubbard & Dorgan, of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court:

Plaintiff brought suit to recover damages for personal injuries suffered as a result of the alleged negligence of the defendant in the operation of his motor vehicle. Trial by jury resulted in a verdict of not guilty. The court entered judgment on the verdict, and denied plaintiff's subsequent motion for a new trial. Plaintiff appeals from the judgment, as well as from the order denying his motion.

At the time of the occurrence, May 10, 1958, plaintiff was sixty-nine years old. Shortly before eleven o'clock that morning, he left his apartment and walked a block to the Clarendon Liquor Store for two six-pack beer cartons. While at the liquor store he drank a small bottle of beer with some friends, then left with his purchase and walked westward along the north sidewalk of Montrose Avenue, crossed Hazel Street, and then turned south on the west sidewalk of Hazel Street to the northwest corner of its intersection with Montrose. According to his testimony, he observed a car parked on the north curb of Montrose Avenue in a no-parking zone, with its rear bumper protruding approximately one foot over the west crosswalk of Hazel Street. Walking south, he stepped off the curb, intending to cross Montrose. While he was looking in an easterly direction to observe westbound traffic and waiting in the confines of the crosswalk until he had an

opportunity to cross, he was struck and knocked to the pavement by defendant's vehicle which was backing in an easterly direction along the north curb of Montrose and proceeding through the crosswalk. The "No Parking any Time" sign was located thirty-eight feet west of the curb line of Hazel Street. Plaintiff sustained a fractured femur which left him with a shortening of one leg, necessitating the use of a cane.

At the time of the accident, and for several years prior thereto, plaintiff had been employed in a Loop building as a night watchman and relief elevator operator. After recovering from his injury, he resumed his employment, which necessitated his patrolling the building corridors. He stated that his weakened leg caused him to fall on the stairs, and as a result he broke his wrist. Thereafter he was unable to resume his duties, and was forced to resign.

The record presents a conflict in the evidence as to the manner in which the accident occurred. Plaintiff contends that defendant's car backed into him while he was crossing the intersection and threw him to the pavement. Defendant, on the other hand, contends and testified that he had parked his car behind another automobile next to the curb on the north side of Montrose Avenue, in front of Mayer's Bait Shop, some thirty to forty feet west of Hazel Street; that he started to back up so as to pull out from the curb; and that plaintiff, carrying his package of beer, staggered against the left front fender and side of defendant's car, and fell down in the north driving lane of Montrose Avenue.

Before reviewing the extensive testimony adduced upon the trial, it becomes necessary to resolve the question whether the court erred in first sustaining and later overruling plaintiff's objections to the admission into evidence of a portion of a report of in-

vestigation contained in the records of the Chicago Police Department. It appears that at the trial Richard Weingart, plaintiff's witness, testified on direct examination that he was a police officer assigned at the time of the accident to squadrol duty in that district; that he and his partner happened to be near-by, and went to the scene immediately; that it was not part of his duty to investigate the accident, nor did he make an investigation, but that within minutes after the occurrence he had a conversation with defendant wherein the latter stated that he had backed his automobile into plaintiff, that he had not hit him hard—just "tapped" him, that he had not seen plaintiff until he "heard him yell," and that plaintiff had nothing to worry about since he would take care of everything. Plaintiff was then taken to Augustana Hospital in Weingart's squadrol, with defendant riding in the rear with him. At the hospital, defendant helped Weingart and his partner move plaintiff to the emergency room. There, for the first time, defendant met a third police officer, George Lahey of the Accident Prevention Division, assigned to make a report of the accident. Lahey drove defendant back to the scene of the occurrence where defendant made a written statement approximately one and one-half to two hours after the occurrence. Defendant then went home. When the statement was taken, neither plaintiff nor Weingart was present.

The entire police report, including defendant's written statement, was produced in court by Police Officer Walter R. Murphy, a record keeper of the department. After identification by Murphy, the written statement was shown to defendant, who testified that it was in his handwriting and bore his signature. The statement in substance reported that plaintiff had fallen backward against the side of defendant's parked automobile. This was consistent with defendant's testimony on direct examination.

225

Lahey, the officer who made the investigation and prepared the entire police report and who was present when the statement was written, was not called as a witness by defendant. One part of the driver's statement in the police report, but not the balance of the records, was offered in evidence by defendant. The court, in the presence of the jury, sustained plaintiff's objection to the police report, and shortly thereafter adjourned for the day. When court convened the following morning, the judge stated to the jury that he wished to interrupt the proceeding to permit the defense to reopen the direct examination of defendant so as to enable him to correct his ruling with regard to the admission of one part of the driver's statement contained in the police report. The exhibit was then reoffered by defendant. The court overruled plaintiff's objection, and the exhibit was admitted. The portion of the police report containing the driver's statement was then read to the jury by defendant's counsel, and during the closing argument counsel again read the exhibit to the jury verbatim.

Plaintiff contends that the oral statement made to one police officer minutes after the accident, and the written statement made approximately one and one-half hours later to another police officer who was not present at the time of the accident, are not parts of a single statement; that a self-serving statement of a party contained in a police report may not be admitted to corroborate his trial testimony; and that in any event a court may not admit a beneficial portion without including the prejudicial portion. The court held that the police report "is a statement that's made in the course of the one, whole complete examination, and isn't subject to exclusion on being self-serving."

In Johnson v. Smitz, 274 Wis. 96, 79 N.W.2d 337 (1956), likewise a personal injury case where the testimony was at sharp variance, a bystander at the col-

lision was permitted to testify as to a statement he overheard one plaintiff give a deceased investigating officer concerning the cause of the accident. On rebuttal an attempt was made to introduce a statement the same plaintiff had made to another investigating officer concerning the cause of the accident; the second investigating officer was not present when plaintiff talked to the deceased investigating officer. The court refused to adopt the contention that plaintiff's separate statements constituted a single statement, and held the proffered rebuttal statement to be inadmissible.

██ ██ The courts in this state have generally held that a police report is not admissible in corroboration of a party's trial testimony, and that the mere attempt to introduce such an exhibit may be considered reversible error. Smith v. Johnson, 2 Ill.App.2d 315, 319, 120 N.E.2d 58 (1954); Paliokaitis v. Checker Taxi Co., 324 Ill. App. 21, 26, 57 N.E.2d 216 (1944); Branch v. Woulfe, 300 Ill. App. 472, 478, 21 N.E.2d 148 (1939). The rule as to the exclusion of statements generally was established in the early case of Stolp v. Blair, 68 Ill. 541 (1873), and has been consistently followed and reiterated in later decisions. In the Stolp case, the court stated (pp. 543–544): "We find the decided weight of authority to be, that proof of declarations made by a witness out of court, in corroboration of testimony given by him on the trial of a cause, is, as a general rule, inadmissible, even after the witness has been impeached or discredited; and we are satisfied with the correctness of the rule." Some later decisions adopting the rule are: Reavely v. Harris, 239 Ill. 526, 529, 88 N.E.2d 238 (1909); Chicago City Ry. v. Matthieson, 212 Ill. 292, 296–297, 72 N.E.2d 443 (1904); Eizerman v. Behn, 9 Ill.App.2d 263, 283–284, 132 N.E.2d 788 (1956).

In Crawford v. Nilan, 289 N. Y. 444, 46 N.E.2d 512 (1943), an action for injuries sustained in an automo-

bile accident was defended on the ground that the automobile was being driven without the owner's permission. Defendant's witness on cross-examination gave testimony indicating the purpose of the trip, but on redirect admitted that he had signed a statement that he did not hear the driver give any reason for the trip. The court stated that the presentation by defendant of the subscribed statement to the witness was proper, since it was inconsistent with the witness' testimony, but held that it was error to admit a statement obtained by plaintiff from the witness on the morning of the day of the trial which was not at variance with the witness' testimony but merely inconsistent with the prior unsworn statement of the witness. Commenting on its ruling, the court said (p. 516): "We have developed the background against which the error must be viewed because the instant case well illustrates the soundness of the decisions requiring the exclusion of the offered declarations. If such were not the rule, litigations might well, on occasion, develop into contests between litigants as to which one could obtain the latest version of a witness. Success would come to him who obtained it even though he had to keep the witness incommunicado, until rushed upon the witness-stand, for fear he might give a different and still later version, which he could make accord with the testimony he had then decided to give. 'We have not in this state departed from that ancient and safe landmark in the law of evidence, which requires a witness in all cases to speak under the solemn sanction of an oath, and I am unwilling to peril the lives, the fame, or the property of individuals, by adopting the contrary doctrine.' Robb v. Jackley, supra, 23 Wend. 57, (Bronson, J.)"

With reference to this question, Wigmore says (4 Wigmore on Evidence, 3d ed., 1940, §§ 1126–1127) that on behalf of the admission of the supporting evidence,

the earlier and conventional argument is that if a contradictory statement counts against the witness, a consistent one should count for him—a conclusion which he characterizes as "a bit of loose logic which is natural and plausible . . . ." He argues that since the self-contradiction is conceded, it remains as a damaging fact, and is in no sense explained away by the consistent statement; it is just as discrediting, if it was once uttered, even though the other story has been consistently told a score of times. A former consistent statement is of no help in removing such discredit as may arise from a contradiction by other witnesses. When B is produced to swear to the contrary of what A has asserted on the stand, it cannot help us, in deciding between them, to know that A has asserted the same thing many times previously. If that were an argument, then the witness who had repeated his story to the greatest number of people would be the most credible.

■ We think that defendant's oral statement to Weingart, and his later written statement to Lahey, who was not a party to any conversation between Weingart and defendant, were not parts of a single statement. It was prejudicial error to admit the report in evidence to corroborate defendant's testimony on trial. In view of the foregoing conclusion, we consider it unnecessary to decide other grounds urged for reversal. The judgment of the Circuit Court is reversed, and the cause remanded for a new trial.

Judgment reversed, and cause remanded for a new trial.

BURKE, P. J. and BRYANT, J., concur.