**Andrew YATES, Plaintiff,**

v.

**BAIR TRANSPORT, INC., Knickerbocker Despatch, Inc. and Samuel Benrubi, individually and d/b/a Jay Bee Co., Defendants.**

United States District Court
S. D. New York.

Dec. 2, 1965.

Emile Z. Berman and A. Harold Frost, New York City, for plaintiff, Marvin V. Ausubel, New York City, of counsel.

Alexander, Ash & Schwartz, New York City, for defendant BAIR Transport, Inc., Sidney Schwartz, New York City, of counsel.

Perrell, Nielsen & Stephens, New York City, for defendant Knickerbocker Despatch, Inc., John W. Fuhrman, New York City, of counsel.

TENNEY, District Judge.

The respective parties herein request of the Court a ruling prior to trial on the admissibility of two proffered items of evidence: firstly, a police blotter report concerning the instant accident, and, secondly, medical reports of various doctors who examined plaintiff in connection with a prior Workmen's Compensation claim arising out of the accident.

The parties have stipulated that if the reporting officer were called he would testify that the police blotter was prepared by him in the regular course of his duties and filed with the Police Department in accordance with his and their regular practice and procedure. If the officer were called, it is further agreed that he would also testify that the photostatic copy was authentic. Plaintiff accordingly argues that a sufficient foundation has been laid for the admissibility of the report without the necessity of calling the police officer.

The Federal Business Records Act, 28 U.S.C. § 1732 (Supp.1964), provides:

"§ 1732. Record made in regular course of business: photographic copies.

(a) In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter."

It further provides that "[a]ll other circumstances of the making of such writing or record [i. e., a record kept in the ordinary course of business] including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility." An identical provision with respect to the contents of the record and the personal knowledge of the maker or entrant is contained in Section 4518 of the New York Civil Practice Law & Rules.

A copy of the police blotter report has been supplied to the Court. Therein the ownership of the vehicle in question is set forth. In addition, the details of the accident are enumerated. The officer, as stated in the report, was not an eyewitness to the accident; in addition, under the heading of names and addresses of witnesses there appears the entry "none". Accordingly, it may be assumed that the information set forth in the report was supplied either by the driver of the truck, a helper, or the plaintiff; however, this is an assumption not based on any affirmative proof.

In spite of the apparent clarity of the language in both statutes to the effect that the fact the entry is based on lack of personal knowledge of the entrant goes to weight rather than admissibility of a record kept in the ordinary course of business, the Courts and commentators have seemingly taken a different view of the metes of this exception to the hearsay rule.

Professor McCormick has summed up the state of the law as follows: "Thus the statements of by-standers recorded in a policeman's report of accident * * * would be denied admission as business records to show the facts reported * * *." McCormick, Evidence § 286 at 602–03 (1954). See 5 Bender's New York Evidence—CPLR § 375 (1965).

As will appear hereinafter, the Courts have also taken similar views.

It is clear that Johnson v. Lutz, 253 N.Y. 124, 170 N.E. 517 (1930) would preclude the admissibility of statements by bystanders given to a police officer at the scene of the accident.

"Where, however, the informant to the entrant of the record is under no duty to anyone to make a truthful account of the facts thus recorded, the record will not be admissible as proof of such facts. Johnson v. Lutz, 253 N.Y. 124, 170 N.E. 517 (Ct.App.1930) (report of policeman as to accident based on information from bystander witness; decided under Model Act; [1] leading case). Aside from Wigmore [5 Wigmore, Evidence § 1530a (3d ed. 1940)], no competent authority in the field and few courts have dissented from this qualification obviously basic to the rationale of the business entry exception [citing cases and Law Review articles]." Fagan v. City of Newark, 78 N.J.Super. 294, 188 A.2d 427, 440 (App.Div.1963).[1A]

A case seemingly in point and holding such a report with statements of bystanders admissible is McKee v. Jamestown Bakery Co., 198 F.2d 551, 556 (3d Cir. 1952): "The [police] report consists of a summary of statements made by witnesses to the accident and some photographs taken immediately after the accident. The refusal to admit the statements was error on the part of the court below. The report was made by Chief of Police Goetz in his official capacity and was therefore made in the 'regular course' of his business." Contra, Gencarella v. Fyfe, 171 F.2d 419 (1st Cir. 1948). However, a later Third Circuit case, Gordon v. Robinson, 210 F.2d 192 (3d Cir. 1954), limited *McKee* to its precise facts (i. e., a situation where "all the pertinent matter[s] appearing in the report * * * [are] testified to competently") (id. at 197 n. 9), and in fact reversed the district court which, based on McKee, had held a police report admissible. Gordon v. Robinson, 109 F. Supp. 106, 108 (W.D.Pa.1952).

"The majority of courts * * * have followed the rule of Johnson v.

Lutz in excluding records, even though the entrant was acting pursuant to business duty, where the informants were not. This limitation has elicited sever criticism from Professor Wigmore and other commentators. They have argued that since the statute expressly rejects the necessity for personal knowledge on the part of the entrant, the only requirements for admissibility are that the entrant be acting in the regular course of his business and that the record be made at or near the time of the event. Some courts have seemingly adopted this view, admitting records regularly made although the information contained was derived ultimately from volunteers.

Despite criticism of the Johnson case, the limitation it imposes seems sound and in accord with the basic philosophy of the business entry statutes. These acts were intended to make admissible records which, because made pursuant to a regular business duty, are presumed to be reliable. The mere fact that recordation of third party statements is routine, taken apart from the source of the information recorded, imports no guaranty of the truth of the statements themselves. There is no reason for supposing an intention to make admissible hearsay of this sort. So to construe these statutes would make of them almost limitless dragnets for the introduction of random, irresponsible testimony beyond the reach of the usual tests for accuracy. Johnson v. Lutz did not ignore the statutory language making personal knowledge unnecessary, but merely emphasized that the presumption of reliability attaches only

---

1. Section 514 of the Model Code of Evidence makes the lack of personal knowledge of the entrant a factor going to admissibility rather than weight.

1A. The Court, in a footnote, observed that
"[n]otwithstanding Wigmore it would be astounding to most lawyers to be

told that under the Uniform Act voluntary statements made to an investigating policeman after an accident by bystanders not produced in court become admissible because the policeman includes such statements in his report." 188 A.2d at 440 n. 6.

to statements made entirely in the course of business.

A record which contains the hearsay statements of volunteers [be they bystanders or participants under no duty to impart the information] then, does not by operation of the business record statutes become admissible to prove the truth of those statements." Note, Revised Business Entry Statutes: Theory & Practice, 48 Columb.L.Rev. 920, 926–27 (1948).

The following reconciliation between the statutory language and the clear weight of authority appears correct:

"This [the statutory language stating that lack of personal knowledge of the maker or entrant goes to weight rather than admissibility] could be interpreted as abolishing the requirement of firsthand knowledge by one whose job is to know the facts. The more reasonable interpretation, however, is to read 'entrant or maker' as meaning the recorder only and thus merely making clear that one who makes the record on reports of others need not know the facts without broadening (beyond the probable intent of the drafters) the content of this hearsay exception to embrace records founded on reports by one who has no business duty to know the facts." McCormick, supra, § 286 at 602.

Or, as stated in Standard Oil Co. of Calif. v. Moore, 251 F.2d 188, 214 (9th Cir. 1957), cert. denied, 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148 (1958): "But where the entrant or maker records information supplied by others, it must appear that 'it was part of their regular course of business to report to him what the declarants themselves knew, as it was part of his business to record what they said.' United States v. Grayson, 2 Cir., 166 F.2d 863, 869. Where the information comes to the entrant or maker from unauthorized persons, the memorandum or record is therefore inadmissible, not because it contains hearsay, but because it was not made in the regular course of business."

Moreover, if the policeman testified in court, his testimony that a bystander told him that the accident occurred thusly would be hearsay and if not within one of the exceptions, inadmissible. Why a different result should be reached where the policeman writes what the bystander said instead of testifying to it, is not readily apparent.

Nor are any of the cases cited by plaintiff to the contrary.

In analyzing these cases, however, it must be borne in mind that there are numerous exceptions to the hearsay rule and that an utterance, while not properly admitted under one exception, may very well be admitted under another.

"It should be recognized, of course, that apart from the business entry statutes there are numerous exceptions to the hearsay rule—e. g., those covering statements regarding present mental or physical conditions, admission, declarations against interest, spontaneous declarations, statements or dying declarations. A record of volunteer hearsay may be admissible as proof of the facts stated where such an exception exists. Many cases which have loosely applied the business entry statutes to admit records to prove the truth of volunteer statements may well have reached a correct result on this ground. They have failed, however, to recognize explicitly that the statutes are applicable only in admitting the first step of hearsay, while the second step is admitted because a further exception wholly independent of business rules is appropriate." 48 Columb.L.Rev. at 928–29. See McCormick, Evidence § 286 at 603 n. 12 (1954); McCormick, Hearsay, 10 Rutgers L.Rev. 620, 629, 630 (1956).

Thus, for example, in Chemical Leaman Tank Lines, Inc. v. Stevens, 21 App. Div.2d 556, 251 N.Y.S.2d 240 (3d Dep't 1964), an under-sheriff, acting in the regular course of his duties, made a report of an accident, quoting in the report what the defendant had said to him concerning her behavior just prior to the accident, which was at variance with her later testimony at trial. Though the

statement in the report, made by the defendant, was that of a volunteer under no duty to impart the information, the trial court held the report admissible under § 374–a of the Civil Practice Act (§ 4518 C.P.L.R.) and the ruling was affirmed on appeal.

To hold the entire record admissible under § 374–a, to prove the truth of all the matters set forth therein, including the defendant's "volunteered" remarks, without an analysis of the contents and character of the declarant, is to undermine the decision in Johnson v. Lutz, supra, and to remove the very sound policy considerations lying behind the "duty of the declarant" requirement engrafted onto the statute by that case.[2]

The reception of the report *in toto*, based on § 374–a, was not in accord with what I perceive to be the law and is a precedent which I would decline to follow. The end result of admissibility, however, is the correct one, better placed on different and more solid ground.

Since the report was made in the ordinary course of the under-sheriff's business, and it was his business to record the defendant's statements, the report with the statements were admissible under § 374–a only to show that these statements were in fact made[3] by the defendant if that is relevant. Once it is established that the defendant made the statement (a statement inconsistent with her position at trial), the substantive contents of the statement are admissible,

not under § 374–a but rather under the admission exception to the hearsay rule.[4] Cf., Missouri Pacific R. R. v. Austin, 292 F.2d 415, 421–422 (5th Cir. 1961); Le Roy v. Sabena Belgian World Airlines, 344 F.2d 266, 274 (2d Cir. 1965), cert. denied, 382 U.S. 878, 86 S.Ct. 161, 15 L.Ed.2d 119 (10/19/65).

The decision in Zaulich v. Thompkins Square Holding Co., 10 App.Div.2d 492, 200 N.Y.S.2d 550 (1st Dep't 1960), is explainable on this basis as well.

Both the decision in *Stevens* as well as *Zaulich* were based on the Court of Appeals decision in Kelly v. Wasserman, 5 N.Y.2d 425, 185 N.Y.S.2d 538, 158 N.E.2d 241 (1959), a decision charitably described as "a typical, rather than representing an ordinarily proper interpretation of § 374–a as established by precedent." 5 Bender's, New York Evidence—C.P.L.R. § 373.01 at 220 (1965).

In the *Kelly* case, Department of Welfare records containing statements made by the defendant, a volunteer, to department employees who recorded them in the ordinary course of business (though the defendant, in giving the statements, was under no duty so to do) were excluded at trial. The Second Department affirmed, but the Court of Appeals reversed. "There can be no doubt but that the alleged statements of defendant [inconsistent with her position at trial], which are most germane to the question of plaintiff's shelter, were the Department of Welfare's business and the prac-

2. "Business Records are deemed reliable because they are based on reports by persons whose routine business duty is to perceive the facts and to transmit information concerning them to others engaged in the business. No such reliability attaches to records based upon information supplied by third persons unrelated to the business." Richardson, Evidence § 230a at 222 (Prince 9th ed. 1964).

3. See Hall v. Plymouth Discount Corp., 23 App.Div.2d 835, 259 N.Y.S.2d 600 (1st Dep't 1965) (Mem.)

4. Had the statement been self-serving, however, "the report containing it would not have been admissible for the state-

ment then would not have come within any exception to the hearsay rule." Prince, Evidence, 1964 Survey of New York Law, 16 Syr.L.Rev. 459, 460 (1965). See also Johnson v. Plodzien, 31 Ill.App. 2d 222, 175 N.E.2d 560 (1st Dist. 1961). Of course, the fact that a statement is self-serving would not in and of itself render it inadmissible under the Business Records Act if, in fact, the statement was made in the ordinary course of business of the declarant. See Bishin v. New York Central R.R., 20 A.D.2d 921, 249 N.Y.S.2d 778 (2d Dep't 1964) (Mem.) In the case at bar, however, we are dealing with statements of volunteers not made in the ordinary course of their business.

686

tice * * * of maintaining records on those receiving welfare support qualified those records for admissibility under section 374–a." 5 N.Y.2d at 429, 185 N.Y.S. 2d at 541, 158 N.E.2d at 243. The Court, however, at no point discussed or even mentioned the question of the defendant's duty to supply the information.

An analysis of the decision reveals, as was the case in *Zaulich* and *Stevens*, that the records and statements were ultimately admissible but on grounds different than those relied on by the Court. The result can be justified thusly: "[S]ince the taking and recording of defendant's statements * * * were done in the regular course of business of the welfare department, indeed it was the duty of the department to take and record these statements—the record is admissible under the business records rule to establish that the defendant actually made these statements. Having thus established that the defendant made these statements they are admissible against him as his admissions." Richardson, Evidence § 230a at 223 (Prince 9th ed. 1964); see 5 Bender's, supra, § 373.01 at 220 n. 6.

The rule in this circuit appears to be in accord with the sound rationale behind the "duty of the declarant" requirement laid down in Johnson v. Lutz, supra. See, e. g., Mamiye Bros. v. Barber S. S. Lines, Inc., 241 F.Supp. 99, 116 (S.D. N.Y.1965).

While at first glance the case of Salsberg v. Modern Transfer Co., 324 F.2d 737 (2d Cir. 1963), would appear to be contrary to the "duty of the declarant" requirement, a closer reading of the trial transcript and report itself reveals that such is not the case.

In *Salsberg*, the police officer, not an eyewitness to the occurrence, filled out a two-page report, the first page consisting of typewritten information supplied by the plaintiff and defendant, respectively, and the second page a diagram of the accident which was a composite of his own investigation, statements of the parties and an eye-witness, and his own opinion based on all these factors.

The Court, in broad language, stated: "There should be little doubt of the admissibility of the report in its original form under 28 U.S.C.A. § 1732(a). Pekelis v. Transcontinental & Western Air, Inc., 187 F.2d 122 (2 Cir. 1951); McKee v. Jamestown Baking Co., 198 F.2d 551 (3 Cir. 1952); United States v. New York Foreign Trade Zone Operators, 304 F.2d 792 (2 Cir. 1962)." 324 F.2d at 738.

In view of the cases heretofore cited and the almost unanimous views of the commentators, the broad statement of the Court is not readily understandable. However, if the case is analyzed as heretofore suggested, the report is ultimately admissible since on the first page there is contained the admissions of the defendant with respect to the speed of his vehicle (statements not self-serving in the least), as well as the statements of the plaintiff, as to his lack of knowledge of any of the circumstances surrounding the accident, such as the speed of his vehicle, the distance between the cars, etc., (whereas at trial he was fairly exacting as to these items). In addition, no objection was taken to the proffer of this first page, and the officer testified in court as well.

Accordingly, a more discerning analysis by the Court as to the basis of the admission of the contents of the report, to prove the truth of the matters stated therein, would have been helpful.

The admission of the second page, consisting of a diagram, which was a composite of personal observation of the cars after the accident by the officer, and statements of the parties and an eyewitness, was solely for the purposes of impeaching the credibility of the officer at trial. As the trial court charged in its instruction to the jury, "You recall that there was offered in evidence an exhibit marked defendants' Exhibit A. * * * I should like to have you distinctly understand that that exhibit consists as you recall of some typewritten material and a diagram. As to the typewritten material you will give it such weight as you think it deserves. As to

the diagram, I repeat you are to examine it only for the purpose of detecting if there existed any inconsistencies between notes on that diagram and the testimony of the witness, the Trooper who testified and for no other purpose. Any markings on that diagram do not establish the truth or falsity of the facts with respect to the accident." (Appellant's Appendix at 174a–75a).

Thus the admission of the diagram, not for all purposes but only for the limited purpose of attacking credibility, if anything, supports the analysis heretofore utilized. For if there was no "duty of the declarant" requirement, the diagram prepared at the scene of the accident in the ordinary course of the business of the trooper, even though based on a composite of the statements of volunteers, should have been admitted for all purposes. It was not so admitted because of the inability to distill the facts reflected in the diagram and attributing them to a specific person. Since this could not be done, the statements could not come in to prove their truth under one of the other exceptions to the hearsay rule such as *res gestae* or admissions. Accordingly, in effect the Court held that a diagram based on statements not made in the ordinary course of the business of the declarant, and not admissible under another exception to the hearsay rule, is not admissible under § 1732 even though the diagram itself (i. e., the mechanical act of drawing) was made in the ordinary course of the business of the trooper.

In *Harrington* v. *Sharff*, 305 F.2d 333 (2d Cir. 1962), the police officer's report contained statements by the respective parties, as well as the opinion of the officer as to the cause of the accident. The only part of the report objected to was that containing the officer's conclusion as to the cause of the accident.

While inferentially the majority opinion appears to characterize the part of the report objected to (i. e., the opinion of the officer, based on the hearsay statements of volunteers) as inadmissible evidence, the concurring opinion by Judge Moore is more explicit in holding the report inadmissible. "Upon any new trial, the problem relating to Officer Paige's report will again arise. He did not see the accident. The statements of each driver were hearsay and the Officer's conclusions as to the cause of the accident were inadmissible under fundamental principles of evidence." Id. at 339.

That such was the ruling of the Court is revealed by Judge Clark in his dissenting opinion wherein he states that the report was erroneously excluded.

The case of Central R. Co. of New Jersey v. Jules S. Sottnek Co., 258 F.2d 85 (2d Cir. 1958), cert. denied, 359 U.S. 913, 79 S.Ct. 588, 3 L.Ed.2d 574 (1959), is even more in point.

In that case, a Fire Marshal's report setting forth statements of eye-witnesses, as well as the opinion of the Fire Marshal as to the cause of the fire based on "the interrogation at the pier of several witnesses" (T.R. 447), was admitted into evidence.

The Court of Appeals, in affirming the jury verdict, held that under the circumstances of the case the reception of the report was not reversible error, in view of the fact that the Fire Marshal was called as a witness and testified without objection as to the same conclusion set forth in the report. However, the Court went on to say that it was not deciding whether the report would have been admitted absent the testimony of the Marshal and in fact indicated that it would not have been admissible.

"It seems clear that the Fire Marshal's report would not be admissible in New York Courts [citing, *inter alia*, Johnson v. Lutz, supra] * * *. The federal rule would require the same result." [5]

Based on the foregoing authorities, it appears that the Business Records Act overcomes the initial hurdle to

5. See also Shenker v. United States, 322 F.2d 622, 627–628 (2d Cir. 1963), cert. denied, American Stevedores v. Shenker,

376 U.S. 907, 84 S.Ct. 659, 11 L.Ed.2d 606 (1963).

the admissibility of evidence, but goes no further. Thus the hearsay statement (of a volunteer) contained in the police officer's report is no more admissible than the testimony of the police officer on the stand as to the hearsay statement made at the scene of the accident. If the making of the statement itself is relevant, it can be proved both by the report, which is a record kept in the ordinary course of business, as well as by the in-Court testimony of the officer. However, if the report is offered to prove the truth of the statement contained therein, the statement must either have been made in the regular course of business of the person making it, or must have an independent ground of admissibility such as an admission, etc., the same as the in-Court testimony of the officer as to the statements made, offered to prove the truth of what was said, must have an independent ground of admissibility,[6] since all that can be shown under the Business Records Act is that in the regular course of business of the officer he wrote that X made the following statement to prove the truth of the fact that X made the statement, not the proof of the facts contained in the statement.[7]

Accordingly, without knowing who made the statements and under what circumstances they were made, an insufficient foundation has presently been laid upon which to admit the proffered report over objection.

We next proceed to the second class of proffered documents—the reports of various doctors who examined plaintiff.

As appears in the pre-trial order filed herein on March 18, 1964, the plaintiff, who was injured in the course of his employment, made a claim in workmen's compensation for the same injuries arising from the same occurrence as is the subject of this suit. The Liberty Mutual Insurance Company (hereinafter at times referred to as "the Insurance Company"), was the insurance carrier for Charles Noeding Trucking Co. Inc., in connection with that claim and was and is the insurance carrier for defendant Knickerbocker Despatch, Inc.

In accordance with the regular procedure under the Workmen's Compensation Law, and in compliance with Rule 2(b) of the Rules of the Workmen's Compensation Board of the State of New York, reports were submitted by certain physicians to the Insurance Company as well as to the Workmen's Compensation Board. Plaintiff wishes to introduce the reports of Doctors Youmans, Guthrie, Lewis, Fleck and Richman into evidence in lieu of calling them as witnesses, and has requested a pre-trial ruling as to their admissibility.

6. See Wabisky v. D. C. Transit Syst., Inc., 114 U.S.App.D.C. 22, 309 F.2d 317 (1962).

7. I do not regard the cryptic footnote in Taylor v. Baltimore & Ohio R. R., 344 F.2d 281, 285 n. 4 (2d Cir. 1965), cert. denied, 382 U.S. 831, 86 S.Ct. 72, 15 L. Ed.2d 75 (10/12/65), as requiring a different result. Therein the Court infers that based on Pekelis v. Transcontinental & W. Air, Inc., 187 F.2d 122, 130–131, 23 A.L.R.2d 1349 (2d Cir.), cert. denied, 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374 (1951), an interpretation different from the one espoused in Johnson v. Lutz, supra, has been given to the federal act. Initially, I must note that the great weight of authority, both state and federal, cited supra, is in support of the Johnson interpretation of the identical New York Act. See, generally, Annot. 69 A.L.R.2d 1148 (1960). I further note the very sound rationale behind the Johnson decision. See note 2, supra. In addition, I note the Second Circuit cases heretofore cited which have cited and followed Johnson and, in fact, in Le Roy v. Sabena Belgian World Airlines, supra. 344 F.2d at 266, the most recent pronouncement, the Court did not reject Johnson v. Lutz but rather distinguished it (on grounds not relevant to the issues herein) from the facts presented in that case. Finally, the decision in Pekelis, supra, in no way destroyed the application of Johnson to the statements of volunteers. For in Pekelis the Court distinguished Johnson since "most, if not all, of the sources of information [in Pekelis] were from persons who were under a duty to report to these boards as part of their employment." 187 F.2d at 131; see Le Roy, supra, 344 F.2d at 273.

It appears from ¶ 4C of the Pre-Trial Order herein that all the parties agreed as to the authenticity of the medical reports which are now being proffered.[8] It further appears from the reports themselves, and it can very easily be verified, that Doctors Guthrie and Youmans examined plaintiff on behalf of Liberty Mutual Insurance Company, that Doctor Richman examined plaintiff on behalf of Interboro Mutual Indemnity Insurance Company, and that Doctors Fleck and Lewis were plaintiff's treating physicians. Accordingly, the reports have been sufficiently authenticated. Compare Pellegrini v. Chicago Great Western Ry., 319 F.2d 447, 455 (7th Cir. 1963).

In ruling on the admissibility of the documents, the reports will be grouped, based on the identity of the party on whose behalf the report was prepared.

In reaching a determination herein, I am assuming, based on the concessions made by defendant Knickerbocker in its memorandum of law (at pg. 3), that Knickerbocker does not seriously contest the fact that the proffered reports of Doctors Youmans and Guthrie were in fact made by them and were made on behalf of Liberty Mutual in the Workmen's Compensation proceeding.

That the report was prepared in the ordinary course of the business of both doctors is indicated by the Court of Appeals decision in White v. Zutell, 263 F.2d 613 (2d Cir. 1959), which involved a medical report made by a specialist who had examined the plaintiff on behalf of the defendant's insurance carrier.

In sustaining the admissibility of the report, the Court stated: "The making of this report was clearly a part of this specialist's 'business'; indeed that is what he was commissioned to do. And it bears its own inherent guaranty of being what it purports to be—a detailed report of what he found medically upon examining the subject. That it might come up in the course of litigation does not affect this guaranty, unless to enhance it; what would be the use of such a report except to aid in fixing legal damage?" Id. at 615.

As stated in McCormick, Evidence § 287 at 604 (1954): "[W]ell reasoned modern decisions have admitted in accident cases the written reports of doctors of their findings from an examination of the injured party when it appears that is the doctor's professional routine or duty to make such report." But, it is argued, all the doctors' reports were prepared specifically for litigation (whether before the Workmen's Compensation Board, or in this suit) and at a time when the motive to misrepresent was present and the reports thus lack the trustworthiness necessary to permit their introduction. Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943) is cited in support of this argument.

In Palmer v. Hoffman, supra, the Court was concerned with the likely untrustworthiness of materials prepared specifically by a prospective litigant for courtroom use (see United States v. New York Foreign Trade Zone Operators, 304 F.2d 792, 797 (2d Cir. 1962)), and thus held that the mere fact of regularity of preparation would not in itself be enough to justify the use of the evidence. The Business Records Act was interpreted in Palmer as facilitating the "admission of records which experience has shown to be quiet trustworthy." 318 U.S. at 113, 63 S.Ct. at 480.

■ Accordingly, what must be found in the case at bar is an added element of trustworthiness which will counterbalance the fact that these reports were prepared in clear anticipation of litiga-

---

8. I might note parenthetically that ¶ 4C provides that all the exhibits are authentic and may be received in evidence, but that each party reserves the right to object to exhibits preceded by the letter (A) on the grounds of relevancy, and exhibits preceded by the letter (B) on the ground of inadmissibility under the hearsay rule. However, there is no such indication (of letter (A) or (B)), preceding any listed exhibit.

tion. With respect to the reports of Doctors Guthrie and Youmans, this added element is present.

"In Pekelis v. Transcontinental & W. Air Inc., 187 F.2d 122 (2 Cir.), cert. denied, 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374 (1951), we held that the district court was erroneous in refusing to admit the plaintiff's offer of certain accident reports prepared by boards set up by the defendant airline to investigate the crash of one of defendant's airplanes. We interpreted the decision in Palmer v. Hoffman to exclude accident reports only when they were prepared for use in litigation or when there was other indicia of their untrustworthiness. The Pekelis reports, the court pointed out, ' * * * were against the interest of the entrant when made, * * * were clearly not part of a story cooked up in advance of litigation in the disguise of business records' and were offered as evidence by the party opposing the one which had had the reports prepared. 187 F.2d at 130.

In Korte v. New York, N. H. & H. R. R., 191 F.2d 86 (2 Cir.), cert. denied, 342 U.S. 868, 72 S.Ct. 108, 96 L.Ed. 652 (1951), another accident case, the district court had admitted certain doctors' reports, offered by the plaintiff, which had been prepared at the request of the defendant railroad. We affirmed the district court. Again, we pointed out that the decision in Palmer v. Hoffman was directed against the admission of hearsay evidence prepared for a litigious or other self-serving purpose. The court in Korte doubted whether the Palmer v. Hoffman rationale extended to reports made by independent doctors. Regardless of this, the Korte court stated that its holding could rest on Pekelis, where it had been held that reports offered by the party adverse to the party for whom the reports were prepared were admissible."

United States v. New York Foreign Trade Zone Operators, 304 F.2d at 798.[9]

Thus the thrust of both opinions supports the admissibility of a doctor's report made in the regular course of business (when litigation was on the horizon) "when offered by one other than the entrant or one for whom the entrant is then working, i. e., the carrier * * *." Rotondi v. McLellan, 194 F.Supp. 415, 417 (E.D.N.Y.1961).

That other courts have refused to follow Korte and instead have followed Masterson v. Pennsylvania R. Co., 182 F.2d 793, 796–797 (3d Cir. 1950),[10] is not binding on this Court since Masterson was sufficiently distinguished, if not disapproved, in Korte. See Robertson v. United States, 263 F.2d 872, 874 (5th Cir. 1959).

Thus in the case at bar the fact that litigation involving Liberty Mutual was pending when these three reports were made, if anything, enhances the trustworthiness of the documents, since it is the plaintiff, not the defendant, who seeks their introduction (i. e., the party whose interest is adverse to that of the party on whose behalf the reports were made.)

Reference must once again be made to White v. Zutell, supra, 263 F.2d 613 (2d Cir. 1959), since it is a case on all fours with the case at bar.

In White, the plaintiff was asked whether he had ever been examined by a Doctor Gilshannon, and the defendants conceded that Doctor Gilshannon "a doc-

---

9. See also Central R. Co. of New Jersey v. Jules S. Sottnek Co., supra, 258 F.2d at 88.

10. Borkovic v. Pennsylvania R. R., 180 F. Supp. 495, 499 (W.D.Pa.1960); Baltimore & O. R. Co. v. O'Neill, 211 F.2d 190, 195–196 (6th Cir. 1954), rev'd on other grounds, 348 U.S. 956, 75 S.Ct. 447, 99 L.Ed. 747 (1955) (Per curiam); Cromling v. Pittsburgh & Lake Erie R. R., 327 F.2d 142, 145–148 (3d Cir. 1963).

tor of * * * [their] choosing" (Appellant's Appendix on Appeal at 154a) had examined the plaintiff and made a report to the defendants. The report was turned over to plaintiff, and based on the foregoing foundation, was offered into evidence "as an admission against interest" (id. at 187a) as well as "a document kept by them [the insurance carrier] in the regular course of business * * *." (Ibid.) On the basis of the *Korte* case (id. at 332a) (which decision was also cited by the Court of Appeals), the report was admitted into evidence. In the case at bar, the foundation is, of course, a more solid one.

In addition to the statements of present complaints and a summary of the examination, discussion by the doctor, and his diagnosis, the report in White v. Zutell also referred to certain X-rays which were taken by another doctor and not produced in court. As noted above, the lower court admitted the entire report, deleting the reference to the insurance carrier as well as the portion of past history.

In affirming, the Court of Appeals held the report admissible as well as the reference to the X-rays.

"Turning now to the objections of detail, the report is not inadmissible because it refers to X-rays of plaintiff taken by another doctor which were not introduced with the report. As the statute clearly states, such a matter may be shown to affect the weight to be given the report, but it does not preclude its admission in evidence." 263 F.2d at 615.

Accordingly, I am inclined to overrule the objection to the report of Doctors Youmans and Guthrie.[11]

No case, however, has been found or cited wherein a plaintiff was permitted to introduce self-serving reports made by doctors of his own choosing, in anticipation of litigation to shore up his own case.[12] In fact, as noted above, analysis of both *Pekelis* and *Korte* supports the argument that, but for the characteristic of admission against the interest of the maker's principle, they would not have been admitted even though they were technically records kept in the ordinary course of business.

The fact that the record is self-serving is, of course, not determinative if made in the ordinary course of business without a view toward litigation. See Bishin v. New York Cent. R. R., 20 App.Div. 2d 921, 249 N.Y.S.2d 778 (2d Dep't 1964) (Mem.)

As stated in the recent case of Taylor v. Baltimore & Ohio R. R., 344 F.2d 281, 286 (2d Cir. 1965), cert. denied, 382 U.S. 831, 86 S.Ct. 72, 15 L.Ed.2d 75 (10/12/65):

> "The report here was made when, so far as the record shows no one thought Taylor had suffered any serious injury, and it can hardly be assumed that a freight agent would appreciate the witty diversity whereby the difference of a few feet in the place of an employee's injury would result in the imposition of a distinct legal regime."

Thus the situation with respect to the reports of the doctors employed by plaintiff is different than that of defendant's doctors (Doctors Guthrie and Youmans) and warrants a different result, since statements by them would (if statements by defendant's doctors can be deemed admissions) be self-serving with no added degree of trustworthiness. They are thus statements made on behalf of a party by persons more inclined to favor that

---

11. However, I make no ruling at the present time as to whether the "history" contained in these two reports which was deleted in White v. Zutell, supra, is to be deleted here as well. See McCormick, Evidence §§ 266, 267 (1954); 3 Wigmore, Evidence § 688 (3d ed. 1940); 6 Wigmore, Evidence §§ 1719–22 (3d ed. 1940); 4 Bender's, Evidence —C.P.L.R. § 295.01 (1965).

12. See Trinidad Rambler, Inc. v. Schneider, 203 A.2d 430 (D.C.Ct.App.1964).

party's position, and the fact that they were made for the purposes of litigation causes me sufficient concern to refuse to admit them at this time.

The Court, with respect to documents falling under the Business Records Act, has a limited discretion. "The district court's discretion with respect to § 1732 is a discretion in judging whether the document offered 'has an inherent probability of trustworthiness.' Central R. R. v. Jules S. Sottnek Co., 258 F.2d 85, 88 (2 Cir. 1958). It is therefore a necessary premise for its exercise that the document's trustworthiness be in doubt. See Shenker v. United States, 322 F.2d 622, 627 (2 Cir. 1963), cert. denied, American Stevedores v. Shenker, 376 U. S. 907, 84 S.Ct. 659, 11 L.Ed.2d 606 (1964) (entry made by employee of party); Puggioni v. Luckenbach Steamship Co., 286 F.2d 340 (2 Cir. 1961) (same); Central R. R. v. Jules S. Sottnek Co., supra (accident report based on bystander's volunteered statements and containing conclusions as to the accident's cause)." Le Roy v. Sabena Belgian World Airlines, 344 F.2d 266, 274 (2d Cir. 1965), cert. denied, 382 U.S. 878, 86 S.Ct. 161, 15 L.Ed.2d 119 (10/19/65).

Accordingly, where, as here, there is no counterbalancing force to the desire to promote the self-interest of the party on whose behalf the report was made, discretion dictates that the objection at this time be sustained and plaintiff be required to call Doctors Lewis and Fleck. Insofar as Doctor Richman is concerned, his status is not clear with respect to the parties involved in the litigation, and with respect to his report there may not be present this added element of trustworthiness. Therefore, I will place him in the latter group of doctors employed by plaintiff and hold his report at this time inadmissible as well.

The rulings of the Court are as noted above.

So ordered.